UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                    )
JAMES J. MURRAY,                    )
          Plaintiff,                )
                                    )
v.                                  )    Civil Docket No.
                                    )    05-11844-WGY
UNITED STATES OF AMERICA and        )
HARLEY G. LAPPIN, as he is          )
Director, Federal Bureau of         )
Prisons, and MICHAEL J. SULLIVAN,   )
as he is United States Attorney     )
for the District of Massachusetts,  )
          Defendants.               )
_____ )
```

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS,
OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

The defendants in above-captioned matter respectfully request that this Court dismiss the above-captioned matter or grant summary judgment in the defendant's favor.

**STATEMENT OF FACTS**

The plaintiff, James Murray, Reg. No. 56285-079, is a former federal inmate who was incarcerated at the Federal Medical Center (FMC) Devens, Massachusetts from October 28, 1998 through May 24, 2004. See Document 1a.[1]  On April 25, 1994, the plaintiff was sentenced in the United States District Court for the District of Massachusetts to a term of imprisonment of twelve (12) years and six (6) months with 60 months of supervised release to follow for the offense of conspiracy to possess with intent to distribute

---

[1] The Declaration of Ann Zgrodnik, Supervisory Attorney Advisor for FMC Devens, is Attached as Document 1.

and attempt to possess with intent to distribute marijuana, a
violation of 21 U.S.C. § 846; and possession of marijuana with
intent to distribute, a violation of 21 U.S.C. § 841(a)(1).  On
May 24, 2004, he was furloughed to an unescorted transfer to a
Community Corrections Center (CCC).  On November 17, 2004, he was
released via Good Conduct Time available to him under 18 U.S.C. §
3624(b).  See Document 1b.

A review of the Administrative Tort Claim records maintained
at the Bureau of Prisons (BOP), Northeast Regional Office
indicates that on or about November 23, 2004, the plaintiff's
attorney submitted an administrative tort claim on behalf of the
plaintiff to the BOP's Northeast Regional Counsel's Office.  See
Document 1c.  In the tort claim, the plaintiff alleged that in
May of 2001, he began to experience vision problems with his
right eye.  The plaintiff alleges that he received inadequate
medical care over a period of years which has caused him to have
three surgical procedures.  As a result of the defendants'
negligence, the plaintiff contends he has lost vision in his
right eye.  As relief, he requested $1,500,000.00 representing
damages for a personal injury.  See Document 1c.

On or about January 26, 2005, the Northeast Regional Counsel
sent the plaintiff's attorney a letter acknowledging receipt of
his administrative tort claim on November 23, 2004.  See Document
1d.  The letter explained to the plaintiff's attorney that under

the provisions of the Federal Tort Claims Act (FTCA), they have six months from the date of receipt to review, consider and adjudicate his claim.  Id.  In a memorandum dated April 12, 2005, Henry J. Sadowski, Northeast Regional Counsel, denied the plaintiff's tort claim.  See Document 1e.  Mr. Sadowski explained that the plaintiff first complained of floaters in his right eye on May 8, 2001 and was seen by a contract Optometrist and Ophthalmologist on several occasions.  It was also explained that prior to his release to a CCC, the plaintiff was evaluated by the Ophthalmologist who noted he had visual acuity of 20/30 in the right eye and 20/25 in the left eye.  Also, it was noted that the medical record indicates that the plaintiff received appropriate medical treatment for his eye problems, consistent with community standards.  Id.  The memorandum concluded that there is no evidence to suggest any negligence on the part of any BOP employee resulted in the plaintiff's alleged personal injury. Id.  Mr. Sadowski advised the plaintiff that if he was dissatisfied with the decision (to deny the tort claim), the plaintiff could bring an action against the United States in an appropriate United States District Court within six (6) months of the date of the letter.  Id.  The plaintiff did not submit a response to the Northeast Regional Counsel requesting reconsideration of his Administrative Tort Claim.

The plaintiff filed the instant civil action on or about

3

September 12, 2005, which is within the applicable statute of limitations set under the Federal Tort Claims Act.

The plaintiff has filed this complaint under the FTCA, 28 U.S.C. §2670, et. seq. The plaintiff alleges that from May of 2001 through September 24, 2001, he complained of having vision problems. See Complaint, ¶16. He contends that the defendants failed to properly evaluate and examine him. Id. He contends that no eye pressure tests were given and no fundus examination was performed. Id. The plaintiff states that he was not seen by an eye specialist until September 24, 2001 who recommended that he be seen immediately by a Glaucoma Specialist. Id. at ¶18. The plaintiff states that he was not seen by a Glaucoma Specialist until November 13, 2001. Id. He claims the defendants further deviated from the standard of medical care which requires that newly diagnosed cases of glaucoma be treated within one to two weeks for measurement of pressure on therapy and visual fields. Id. The plaintiff also claims that the Glaucoma Specialist recommended that Trabeculoplasty be performed on his right eye immediately. Id. at ¶19. However, the plaintiff states that the surgery was not performed until January 15, 2002, nearly two months later. Id. at ¶19. He claims that this delay in medical care represents a further deviation from the standard of medical care that should be provided to the plaintiff. Id. The plaintiff further contends that the defendants failed to dispense

4

eye medications to him in a timely manner.  Id. at ¶21.
Additionally, he claims that from May of 2001 through May of
2004, the defendants failed to monitor him with repeated visual
fields.  Id. at ¶22.  The plaintiff claims that as a direct and
proximate result of the negligent acts of the defendants, the
plaintiff has suffered permanent damage to his optic nerve, loss
of vision in his right eye, endured pain and suffering, and has
been in poor health.  Id. at ¶¶23, 24.  As relief, the plaintiff
requests damages and costs for such other relief as the Court
deems appropriate in these circumstances.  Id. at ¶24.

**ARGUMENT**

**I.    The United States is the only proper defendant under the
        FTCA.**

A civil action filed under the FTCA, 28 U.S.C. §§ 1346, 2672
et seq., is a suit against the United States.  The FTCA is a
limited waiver of sovereign immunity by the United States.
United States v. Orleans, 452 U.S. 807 (1976).  As sovereign, the
United States is immune from suit except as it consents to be
sued, and the terms of its consent, as set fort by Congress,
define the limits of the federal courts' subject matter
jurisdiction to decide suits brought against it.  Honda v. Clark,
386 U.S. 484 (1967); United States v. Sherwood, 312 U.S. 584
(1941).  The FTCA does not create any substantive causes of
action against the United States, rather it establishes a
procedure for remedy.  Richards v. United States, 369 U.S. 1

5

(1962); <u>Dalhite v. United States</u>, 346 U.S. 15 (1953); <u>Feres v. United States</u>, 340 U.S. 135 (1950).

Under the FTCA, the United States is liable for personal injury caused by the negligent or wrongful acts or omissions of a government employee acting within the scope of his/her office or employment.  28 U.S.C. § 2674; 28 U.S.C. § 1346(b).  <u>See generally</u>, <u>Carlson v. Green</u>, 446 U.S. 14 (1980); <u>Logue v. United States</u>, 412 U.S. 521 (1973); <u>United States v. Muniz</u>, 374 U.S. 150 (1963); <u>Feres v. United States</u>, 240 U.S. 135 (1950).

Therefore, because the FTCA is a limited waiver of sovereign immunity which extends to the United States but not to its employees, the Director of the Bureau of Prisons and United States Attorney for the District of Massachusetts should be dismissed and the only defendant should be the United States of America.

**II.   To the extent that the plaintiff seeks damages for negligent medical treatment rendered prior to November 23, 2002, these claims are barred by the applicable statute of limitations.**

Title 28 U.S.C. § 2401(b) contains two provisions pertaining to the timing of FTCA litigation.  The first requires that any tort claim against the United States be "presented in writing to the appropriate federal agency within two years after such claim accrues."  In the case at hand, the plaintiff's allegations date as far back as May of 2001.  Complaint ¶16.  The plaintiff's administrative tort claim was filed on November 23, 2004.

6

Document 1C.  Because the FTCA requires claimants to present their administrative claims within two years after the claim accrues, the earliest causes of action this court may consider are those that are alleged to have occurred on or after November 23, 2002, two years prior to the filing of the administrative claim.

It is well settled that limitation periods in statutes waiving sovereign immunity are jurisdictional, and courts exercising their equitable authority may not expand its jurisdiction beyond the limits established by Congress.  <u>Ramming v. United States</u>, 281 F.3d 158 (5th Cir. 2001); <u>Houston v. United States Postal Service</u>, 823 F.2d 896, 898, 902 (5th Cir. 1987).  When construing the statute of limitations which is a condition of the FTCA's waiver of sovereign immunity, the Court should not take it upon itself to extend that waiver beyond that which Congress intended.  <u>United States v. Kubrick</u>, 444 U.S. 111, 118 (1979); <u>Roman v. Townsend</u>, 224 F.3d 24, 28 (1st Cir. 2000).

Therefore, because the plaintiff failed to file his administrative tort claim prior to November 23, 2004, this civil action is limited to only those allegations which are alleged to have occurred on or after November 23, 2002.

In paragraph 19 of the Complaint, the plaintiff states the following:

> On November 13, 2001, the D'Ambrosio Eye Clinic
> confirmed the Plaintiff's glaucoma diagnosis and

> indicated that a Trabeculoplasty should be performed on
> the Plaintiff's right eye immediately.  Surgery was
> delayed for a period of nearly two (2) months, that is
> until January 15, 2002.  This delay represented a
> further deviation from the applicable standard of
> medical care.

See Complaint, ¶16.  As stated above, the plaintiff's civil

action is limited to only those allegations which are alleged to

have occurred on or after November 23, 2002.  Accordingly, all

allegations of negligent medical treatment performed by the BOP

prior to November 23, 2002, must be dismissed as this Court lacks

jurisdiction to hear said claims.  This includes all the medical

treatment leading up to and beyond the defendant's diagnosis of

glaucoma which, as the plaintiff states, occurred on or before

November 13, 2001.

**III. To the extent that the plaintiff alleges his damages were caused by the negligence of a physician who is not an employee of the United States, the Complaint should be dismissed because government is not liable for the alleged negligence of a non-governmental medical practitioner.**

The plaintiff contends that his medical care was controlled

by the BOP, FMC Devens, from October of 1998 through May 24,

2004.  See Complaint, ¶20.  He further contends that from May of

2001 through May of 2004 "FMC Devens should have monitored the

Plaintiff with repeated so called 'visual fields."  Id. at ¶22.

Records indicate that the plaintiff was being followed by a

Contract Optometrist and Contract Ophthalmologist for his eye

condition while he was incarcerated at FMC Devens.  See Document

2, *Passim*.[2]  These individuals are not federal employees.
Therefore, this complaint should be dismissed, because any
negligent act committed by a non-government employee is not
actionable under the FTCA.

A motion to dismiss pursuant to Rule 12 (b)(1) challenges a
court's statutory or constitutional power to adjudicate a case
and "[t]ypically alleges that the federal court lacks either
federal question or diversity jurisdiction over the action." 2A
James W. Moore et al., Moore's Federal Practice, para. 12.07 (2d
Ed. 1994).  Once challenged, the burden of establishing a federal
court's subject matter jurisdiction over a matter rests on the
party asserting jurisdiction.  Id.

The United States is immune from suit "save as it consents
to be sued . . . and the terms of its consent to be sued in any
court define that court's jurisdiction to entertain that suit."
United States v. Sherwood, 312 U.S. 584, 586 (1941).  The FTCA,
28 U.S.C. § 2671, et seq., creates a limited waiver of sovereign
immunity for claims against the United States.  The FTCA provides
in pertinent part, "The United States shall be liable, respecting
the provisions of this title relating to tort claims, in the same
manner and to the same extent as a private individual under like
circumstances, but shall not be liable for interest prior to

---

[2] The Declaration of Sandra L. Howard, M.D., is attached as
Document 2.

9

judgment or for punitive damages."  28 U.S.C. § 2674.

Federal law grants the district courts jurisdiction in civil actions for injuries caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.  28 U.S.C. § 1346(b).

The FTCA grants a limited waiver of the Government's sovereign immunity and permits recovery against the United States for the tortuous acts or omissions of government agents or employees.  Williams v. United States, 50 F.3d 299, 305 (4th Cir.1995);  28 U.S.C. § 2671.  Because the FTCA creates a waiver of sovereign immunity, it is strictly construed and all ambiguities are resolved in favor of the United States.  Id. at 305.  Thus, the Court has subject matter jurisdiction over this action only if the negligent or wrongful acts were caused by a Government employee.  Moreno v. United States, 965 F. Supp. 521 (S.D.N.Y. 1997).

Under the FTCA, Government employees are defined as "officers or employees of any federal agency . . . and persons acting on behalf of a federal agency in an official capacity . . ."  28 U.S.C. § 2671.  The FTCA makes clear that a federal agency does not include "any contractor with the United States."  Id.

10

Courts have interpreted this provision to expressly preclude the United States from being held liable for the negligence of its independent contractors.  Moody v. United States, 753 F. Supp. 1042, 1046 (N.D.N.Y. 1990) (citing Logue v. United States, 412 U.S. 521, 528 (1973)); United States v. Orleans, 425 U.S. 807, 814 (1976); Roditis v. United States, 122 F.3d 108, 111 (2d Cir. 1997); Gardner v. United States, 780 F.2d 835, 837 (9th Cir. 1986); Maltais v. United States, 546 F.Supp. 96, 100 (N.D.N.Y. 1982), aff'd without op., 729 F.2d 1442 (2d Cir. 1983).  It has been reasoned that since a claim against the government for the negligence of its independent contractors "falls outside the FTCA's provisions, the claim is barred by the Government's sovereign immunity." Berghoff v. United States, 737 F.Supp. 199, 201 (S.D.N.Y. 1989).  Thus, under the FTCA, a plaintiff may not bring a cause of action against the government for the negligence of its independent contractors.

Whether an entity is a federal employee or an independent contractor is a question of federal law.  Leone v. United States, 910 F.2d 46, 49 (2d Cir. 1990), cert. denied, 499 U.S. 905 (1991).  In evaluating the nature of the relationship between the Government and the entity, the Court focuses on the terms of the contract between them.  Williams v. United States, 50 F.3d at 305.  Specifically, there are two primary factors that distinguish an agent from an independent contractor: (1) the

11

"power of the Federal Government `to control the detailed physical performance of the contractor." United States v. Orleans, 425 U.S. 807, 814 (1976) (quoting Loque v. United States, 412 U.S. 521, 528 (1973)); and (2) whether the Government supervises the day-to-day operations of the contractor. B & A Marine Co., Inc. v. American Foreign Shipping Co., 23 F.3d 709, 713 (2d Cir.), cert. denied, 513 U.S. 961 (1994); Williams, 50 F.3d at 306.

In this case, the post-glaucoma diagnosis treatment for the plaintiff was performed by the Contract Ophthalmology office. See Document 2. The plaintiff makes no allegation that the individuals who worked for the contract Ophthalmology office were Government employees. There is no evidence that medical personnel from FMC Devens instructed the Contract Ophthalmology office as to how to treat the plaintiff. The Contract Ophthalmology office, not the BOP, controlled the type of medical care they rendered to the plaintiff. Accordingly, the United States did not waive its sovereign immunity under the FTCA and the Court is without subject-matter jurisdiction to entertain the plaintiff's claims against the United States for any medical attention rendered by the Contract Ophthalmology office.

Therefore, the United States has not waived its sovereign immunity to any alleged tortuous act committed by the Contract Ophthalmology office. Therefore, the remaining allegations must

12

be dismissed as the Court lacks of subject-matter jurisdiction where the post-glaucoma diagnosis treatment for the plaintiff was performed by the Contract Ophthalmology office.  28 U.S.C. § 1346(b);  Williams, 50 F.3d at 304.

IV.  **Summary judgment should be granted in favor of the United States on any remaining claims of medical negligence.**

Under the FTCA and subject to its exceptions, the United States is liable in the same manner and to the same extent as a private individual in like circumstances.  28 U.S.C. § 2674. Consequently, the substantive medical malpractice law of the Commonwealth of Massachusetts applies to this case.  28 U.S.C. §§ 1364(b)(1) and 2674.  Under Massachusetts law, a plaintiff in a medical malpractice suit bears the burden of proving by a preponderance of the evidence that a physician-patient relationship existed between the physician and the injured party, that the physician breached his or her duty of care, and that the breach was a proximate cause of some injury.  Mitchell v. United States, 141 F.3d 8, 13 (1st Cir. 1998).  A physician is held to the standard of care of the average practitioner of the medical specialty in question.  Id. at 13.  A plaintiff in a medical malpractice action must establish a causal connection between a defendant's alleged negligence and ensuing injuries.  Rosario v. United States, 824 F. Supp. 268, 287 (D. Mass. 1993).  Generally, a plaintiff in a medical malpractice case may carry his burden of proof on issues of negligence and causation only with the

assistance of expert testimony.  <u>Mitchell</u>, 141 F.3d at 13.

The plaintiff's claim against the defendants for medical malpractice fails for the simple reason that there is no evidence to support it.  The medical record indicates that while the plaintiff was at FMC Devens he received appropriate medical care. <u>See</u> Document 2.  In the parlance of tort law, the BOP did not breach its duty of care owed to the plaintiff.[3]  The defendants are not aware of any medical expert opinion to the contrary. Accordingly, the defendants respectfully suggest that, in as far as the Court determines that the plaintiff has alleged some claim that falls within the statute of limitations of the FTCA and was not performed by an independent contractor for which the United States is not liable, summary judgment issue in the defendants' favor.

## V.    The plaintiff's request for a jury trial is inappropriate in an FTCA action and must be denied.

Any action against the United States under 28 U.S.C. §1346 shall be tried by the court without a jury.  Thus, to the extent that the plaintiff is attempting to assert a cause of action pursuant to the FTCA, he is not entitled to a jury trial. Therefore, the plaintiff's request for a jury trial must be denied.

---

[3] Even if the plaintiff could establish that the defendants breached their duty of care owed to him (the defendants do not concede this issue), the plaintiff cannot establish that the breach was a proximate cause of some injury. <u>See</u> Document 2.

14

**CONCLUSION**

For all of the aforementioned reasons, the defendant respectfully suggests that the complaint be dismissed or summary judgment granted in the defendant's favor.

Respectfully submitted,

UNITED STATES OF AMERICA
By its attorney,

MICHAEL J. SULLIVAN
United States Attorney

Dated: January 19, 2006  By:  /S/ Christopher R. Donato
Christopher R. Donato
Assistant U.S. Attorney
U.S. Attorney's Office
John Joseph Moakley Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3303

**CERTIFICATE OF SERVICE**

I hereby certify that the above document was filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated: January 18, 2006       /S/ Christopher R. Donato
Christopher R. Donato
Assistant U.S. Attorney

15

# Document 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JAMES J. MURRAY, | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Case Number |
| v. | ) | 05-CV-11844-WGY |
| | ) | |
| UNITED STATES, et. al., | ) | |
| Defendants. | ) | |
| . | ) | |

DECLARATION OF ANN H. ZGRODNIK

I, Ann H. Zgrodnik, hereby make the following declaration:

1.  I am currently employed by the United States Department of Justice, Federal Bureau of
    Prisons as a Supervisory Attorney Advisor at the Consolidated Legal Center located at the
    Federal Medical Center (FMC) in Devens, Massachusetts. I have been employed with the
    Federal Bureau of Prisons since February, 2002.

2.  In order to perform my official duties as an Attorney Advisor, I have access to BOP records
    and databases regarding federal prisoners including, but not limited to, documentary
    records, inmate Judgment and Commitment files, and computerized records maintained on
    the Bureau of Prisons computerized data base.

3.  Attached hereto please find true and correct copies of the following documents:

    a.  Inmate History Quarters for inmate James Murray, Register Number 56285-079;
    b.  Public Information Data for inmate James Murray, Register Number 56285-079;
    c.  Letter to Northeast Regional Counsel and Claim for Damage, Injury, or Death
        (NERO);
    d.  Acknowledgment Letter dated January 26, 2005;
    e.  Memorandum from Northeast Regional Office dated April 12, 2005.

I declare the foregoing is true and correct to the best of my knowledge and belief, and given under penalty of perjury pursuant to 28 U.S.C. § 1746.

Executed this 14th day of December 2005.

Ann H. Zgrodnik
Supervisory Attorney Advisor
Federal Medical Center
Devens, Massachusetts

Page 2 of 2

# Document 1a

```
REG NO..: 56285-079  NAME....: MURRAY, JAMES
CATEGORY: QTR           FUNCTION: DIS            FORMAT:

FCL   ASSIGNMENT  DESCRIPTION                      START DATE/TIME STOP   DATE/TIME
DEV   I01-009L    HOUSE I/RANGE 01/BED 009L        01-29-2004 1449 05-24-2004 0821
DEV   I01-009U    HOUSE I/RANGE 01/BED 009U        06-16-2003 1059 01-29-2004 1449
DEV   I01-009L    HOUSE I/RANGE 01/BED 009L        06-03-2003 1347 06-16-2003 1059
DEV   I01-015U    HOUSE I/RANGE 01/BED 015U        04-18-2003 1209 06-03-2003 1347
DEV   J01-115U    HOUSE J/RANGE 01/BED 115U        02-27-2003 0758 04-18-2003 1207
DEV   J03-318U    HOUSE J/RANGE 03/BED 318U        01-29-2003 1536 02-27-2003 0758
DEV   J03-318U    HOUSE J/RANGE 03/BED 318U        01-14-2003 1015 01-29-2003 1306
DEV   J03-318U    HOUSE J/RANGE 03/BED 318U        01-06-2003 1325 01-14-2003 0749
DEV   J03-318U    HOUSE J/RANGE 03/BED 318U        01-02-2003 1024 01-06-2003 1224
DEV   J03-318U    HOUSE J/RANGE 03/BED 318U        12-30-2002 1345 01-02-2003 0828
DEV   J03-318U    HOUSE J/RANGE 03/BED 318U        12-27-2002 1113 12-30-2002 1004
DEV   J03-318U    HOUSE J/RANGE 03/BED 318U        12-23-2002 1123 12-27-2002 0905
DEV   J03-318U    HOUSE J/RANGE 03/BED 318U        12-19-2002 1512 12-23-2002 1020
DEV   J03-318U    HOUSE J/RANGE 03/BED 318U        12-18-2002 1434 12-19-2002 1300

G0002      MORE PAGES TO FOLLOW . . .
```

REG NO..: 56285-079  NAME....: MURRAY, JAMES
CATEGORY: QTR          FUNCTION: DIS          FORMAT:

| FCL | ASSIGNMENT | DESCRIPTION | START DATE/TIME | STOP DATE/TIME |
|-----|------------|-------------|-----------------|----------------|
| DEV | J03-318U | HOUSE J/RANGE 03/BED 318U | 12-17-2002 0921 | 12-18-2002 1204 |
| DEV | J03-318U | HOUSE J/RANGE 03/BED 318U | 12-09-2002 1420 | 12-17-2002 0554 |
| DEV | J03-318U | HOUSE J/RANGE 03/BED 318U | 11-20-2002 1503 | 12-09-2002 1132 |
| DEV | J03-318U | HOUSE J/RANGE 03/BED 318U | 11-13-2002 1057 | 11-20-2002 1228 |
| DEV | J03-318U | HOUSE J/RANGE 03/BED 318U | 11-08-2002 1532 | 11-13-2002 0839 |
| DEV | J03-318U | HOUSE J/RANGE 03/BED 318U | 10-31-2002 1306 | 11-08-2002 1319 |
| DEV | J03-318U | HOUSE J/RANGE 03/BED 318U | 10-29-2002 1310 | 10-31-2002 1127 |
| DEV | I01-009L | HOUSE I/RANGE 01/BED 009L | 10-24-2002 1328 | 10-29-2002 1310 |
| DEV | I01-009L | HOUSE I/RANGE 01/BED 009L | 10-21-2002 1425 | 10-24-2002 1221 |
| DEV | I01-009L | HOUSE I/RANGE 01/BED 009L | 10-18-2002 1313 | 10-21-2002 1232 |
| DEV | I01-009L | HOUSE I/RANGE 01/BED 009L | 10-17-2002 1340 | 10-18-2002 1108 |
| DEV | I01-009L | HOUSE I/RANGE 01/BED 009L | 10-16-2002 1217 | 10-17-2002 1156 |
| DEV | I01-009L | HOUSE I/RANGE 01/BED 009L | 10-15-2002 0911 | 10-16-2002 1109 |
| DEV | I01-009L | HOUSE I/RANGE 01/BED 009L | 09-23-2002 1235 | 10-15-2002 0621 |

G0002      MORE PAGES TO FOLLOW . . .

Case 1:05-cv-11844-WGY    Document 7-2    Filed 01/19/2006    Page 7 of 33

```
   REG NO..: 56285-079 NAME....: MURRAY, JAMES
   CATEGORY: QTR        FUNCTION: DIS        FORMAT:
```

| FCL | ASSIGNMENT | DESCRIPTION | START DATE/TIME | STOP DATE/TIME |
|-----|-----------|-------------|-----------------|----------------|
| DEV | I01-009L | HOUSE I/RANGE 01/BED 009L | 08-23-2002 1308 | 09-23-2002 1007 |
| DEV | I01-009L | HOUSE I/RANGE 01/BED 009L | 08-05-2002 0844 | 08-23-2002 1020 |
| DEV | I01-009L | HOUSE I/RANGE 01/BED 009L | 01-29-2002 1117 | 08-05-2002 0712 |
| DEV | I01-009L | HOUSE I/RANGE 01/BED 009L | 01-16-2002 0925 | 01-29-2002 0946 |
| DEV | I01-008L | HOUSE I/RANGE 01/BED 008L | 01-15-2002 1207 | 01-16-2002 0925 |
| DEV | I01-009L | HOUSE I/RANGE 01/BED 009L | 01-15-2002 1045 | 01-15-2002 1207 |
| DEV | I01-009L | HOUSE I/RANGE 01/BED 009L | 01-14-2002 1142 | 01-15-2002 0910 |
| DEV | I01-008L | HOUSE I/RANGE 01/BED 008L | 11-13-2001 1501 | 01-14-2002 1142 |
| DEV | I01-008L | HOUSE I/RANGE 01/BED 008L | 09-27-2001 1038 | 11-13-2001 1140 |
| DEV | I01-046L | HOUSE I/RANGE 01/BED 046L | 03-26-2001 1452 | 09-27-2001 1038 |
| DEV | I01-010U | HOUSE I/RANGE 01/BED 010U | 02-20-2001 1337 | 03-26-2001 1452 |
| DEV | I01-010L | HOUSE I/RANGE 01/BED 010L | 09-22-2000 1052 | 02-20-2001 1337 |
| DEV | I04-001U | HOUSE I/RANGE 04/BED 001U | 04-18-2000 1006 | 09-22-2000 1052 |
| DEV | Z02-203LAD | HOUSE Z/RANGE 02/BED 203L AD | 04-08-2000 1654 | 04-18-2000 1006 |

```
G0002        MORE PAGES TO FOLLOW . . .
```

Case 1:05-cv-11844-WGY   Document 7-2   Filed 01/19/2006   Page 8 of 33

```
   REG NO..: 56285-079 NAME....: MURRAY, JAMES
   CATEGORY: QTR        FUNCTION: DIS        FORMAT:
```

| FCL | ASSIGNMENT | DESCRIPTION | START DATE/TIME | STOP DATE/TIME |
|-----|-----------|-------------|-----------------|----------------|
| DEV | Z02-211UAD | HOUSE Z/RANGE 02/BED 211U AD | 03-31-2000 1833 | 04-08-2000 1654 |
| DEV | I04-001U | HOUSE I/RANGE 04/BED 001U | 10-22-1999 1711 | 03-31-2000 1833 |
| DEV | I04-005L | HOUSE I/RANGE 04/BED 005L | 10-18-1999 1110 | 10-22-1999 1711 |
| DEV | I04-005L | HOUSE I/RANGE 04/BED 005L | 09-17-1999 0608 | 10-18-1999 1018 |
| DEV | H01-110L | HOUSE H/RANGE 01/BED 110L | 09-16-1999 1300 | 09-17-1999 0608 |
| DEV | I04-005L | HOUSE I/RANGE 04/BED 005L | 03-10-1999 1219 | 09-16-1999 1300 |
| DEV | I04-005L | HOUSE I/RANGE 04/BED 005L | 02-24-1999 1133 | 03-10-1999 0931 |
| DEV | I04-005L | HOUSE I/RANGE 04/BED 005L | 02-03-1999 1723 | 02-24-1999 0913 |
| DEV | I03-002U | HOUSE I/RANGE 03/BED 002U | 01-26-1999 1844 | 02-03-1999 1723 |
| DEV | I03-001L | HOUSE I/RANGE 03/BED 001L | 10-28-1998 1301 | 01-26-1999 1844 |
| ALW | B6 | DORMITORY B6 | 10-19-1998 1600 | 10-28-1998 0530 |
| ALW | B2 | DORMITORY B2 | 12-08-1997 1814 | 10-19-1998 1600 |
| ALW | B2 | DORMITORY B2 | 02-06-1996 1600 | 12-08-1997 1417 |
| ALW | B1 | DORMITORY B1 | 12-21-1995 1023 | 02-06-1996 1600 |

```
G0002        MORE PAGES TO FOLLOW . . .
```

Case 1:05-cv-11844-WGY   Document 7-2   Filed 01/19/2006   Page 9 of 33

REG NO..: 56285-079 NAME....: MURRAY, JAMES
CATEGORY: QTR          FUNCTION: DIS          FORMAT:

| FCL | ASSIGNMENT | DESCRIPTION | START DATE/TIME | STOP DATE/TIME |
|-----|-----------|-------------|-----------------|----------------|
| ALF | UA 32B | UNION A BED 32 BOTTOM | 10-05-1995 1859 | 12-21-1995 0910 |
| ALF | UA 30B | UNION A BED 30 BOTTOM | 12-19-1994 1503 | 10-05-1995 1859 |
| ALF | UA 31T | UNION A BED 31 TOP | 09-20-1994 1342 | 12-19-1994 1503 |
| ALF | UAG | UNION A | 05-18-1994 2235 | 09-20-1994 1342 |
| ALF | R&D | R&D | 05-18-1994 1945 | 05-18-1994 2235 |
| ERE | AR1 | ARKANSAS UNIT #1 | 11-26-1991 1530 | 12-02-1991 0600 |

G0005        TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED

# Document 1b

Case 1:05-cv-11844-WGY   Document 2-2   Filed 01/19/2006   Page 11 of 33

```
REGNO..: 56285-079 NAME: MURRAY, JAMES
COMP NO: 010       ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS       RESP OF: CBN / GOOD CONDUCT TIME RELEASE
                   PHONE..: 617-565-4293   FAX: 617-565-4297
                                           RACE/SEX...: WHITE / MALE
FBI NUMBER.: 564497V2                       DOB/AGE....: 02-11-1956 / 49
ACTUAL RELEASE METH.: GCT REL
ACTUAL RELEASE DATE.: 11-17-2004
-------------------------- ADMIT/RELEASE HISTORY ----------------------------
FCL   ASSIGNMENT  DESCRIPTION            START DATE/TIME STOP  DATE/TIME
CBN   GCT REL     GOOD CONDUCT TIME REL (CCCA)  11-17-2004 0933 CURRENT
CBN   A-HC SENT   HOME CONFINEMENT-SENTENCED   09-02-2004 0702 11-17-2004 0933
O-P   RELEASE     RELEASED FROM IN-TRANSIT FACL 09-02-2004 0702 09-02-2004 0702
O-P   A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 09-02-2004 0700 09-02-2004 0702
CBN   TRANSFER    TRANSFER                     09-02-2004 0700 09-02-2004 0700
CBN   A-DES       DESIGNATED, AT ASSIGNED FACIL 05-24-2004 1012 09-02-2004 0700
7-F   RELEASE     RELEASED FROM IN-TRANSIT FACL 05-24-2004 1012 05-24-2004 1012
7-F   A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 05-24-2004 0821 05-24-2004 1012

G0002       MORE PAGES TO FOLLOW . . .
```

Case 1:05-cv-11844-WGY   Document 7-2   Filed 01/19/2006   Page 12 of 33

```
                              PUBLIC INFORMATION
                                  INMATE DATA
                               AS OF 11-21-2005                     11:11:31


REGNO..: 56285-079 NAME: MURRAY, JAMES
COMP NO: 010       ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS       RESP OF: CBN / GOOD CONDUCT TIME RELEASE
                   PHONE..: 617-565-4293   FAX: 617-565-4297
DEV   FURL TRANS  FURL W/UNESCORTED TRF TO A CCC 05-24-2004 0821 05-24-2004 0821
DEV   A-DES       DESIGNATED, AT ASSIGNED FACIL  04-18-2003 1209 05-24-2004 0821
7-F   RELEASE     RELEASED FROM IN-TRANSIT FACL  04-18-2003 1209 04-18-2003 1209
7-F   A-ADMIT     ADMITTED TO AN IN-TRANSIT FACL 04-18-2003 1207 04-18-2003 1209
DEV   TRANSFER    TRANSFER                       04-18-2003 1207 04-18-2003 1207
DEV   A-DES       DESIGNATED, AT ASSIGNED FACIL  01-29-2003 1536 04-18-2003 1207
DEV   LOCAL HOSP  ESC TRIP TO LOCAL HOSP W/RETN  01-29-2003 1306 01-29-2003 1536
DEV   A-DES       DESIGNATED, AT ASSIGNED FACIL  01-14-2003 1015 01-29-2003 1306
DEV   LOCAL HOSP  ESC TRIP TO LOCAL HOSP W/RETN  01-14-2003 0749 01-14-2003 1015
DEV   A-DES       DESIGNATED, AT ASSIGNED FACIL  01-06-2003 1325 01-14-2003 0749
DEV   LOCAL HOSP  ESC TRIP TO LOCAL HOSP W/RETN  01-06-2003 1224 01-06-2003 1325
DEV   A-DES       DESIGNATED, AT ASSIGNED FACIL  01-02-2003 1024 01-06-2003 1224
DEV   LOCAL HOSP  ESC TRIP TO LOCAL HOSP W/RETN  01-02-2003 0828 01-02-2003 1024


G0002       MORE PAGES TO FOLLOW . . .
```

Case 1:05-cv-11844-WGY    Document 2-2    Filed 01/19/2006    Page 13 of 33

REGNO..: 56285-079 NAME: MURRAY, JAMES
COMP NO: 010       ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS       RESP OF: CBN / GOOD CONDUCT TIME RELEASE
                   PHONE..: 617-565-4293   FAX: 617-565-4297
PRE-RELEASE PREPARATION DATE: 05-17-2004

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S PRIOR COMMITMENT.
THE INMATE WAS SCHEDULED FOR RELEASE:  11-17-2004 VIA GCT REL

-----------------------PRIOR JUDGMENT/WARRANT NO: 010 ----------------------

COURT OF JURISDICTION...........: MASSACHUSETTS
DOCKET NUMBER...................: 91-10305-05-WGY
JUDGE...........................: YOUNG
DATE SENTENCED/PROBATION IMPOSED: 04-25-1994
DATE COMMITTED..................: 05-18-1994
HOW COMMITTED...................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED...............: NO

G0002      MORE PAGES TO FOLLOW . . .

Case 1:05-cv-11844-WGY    Document 7-2    Filed 01/19/2006    Page 14 of 33

```
REGNO..: 56285-079 NAME: MURRAY, JAMES
COMP NO: 010       ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS       RESP OF: CBN / GOOD CONDUCT TIME RELEASE
                   PHONE..: 617-565-4293   FAX: 617-565-4297


                   FELONY ASSESS  MISDMNR ASSESS   FINES         COSTS
NON-COMMITTED.:    $250.00        $00.00           $17,500.00    $00.00

RESTITUTION...:    PROPERTY:  NO  SERVICES:  NO         AMOUNT:  $00.00

------------------------PRIOR OBLIGATION NO: 010 ------------------------
OFFENSE CODE....:  391
OFF/CHG: 21:846 CONSP TO PWID & ATTEMPT TO PWID MARIJUANA; 21:841(A)(1)
         POSSESSION OF MARIJUANA WITH INTENT TO DISTRIBUTE

 SENTENCE PROCEDURE............: 3559 SRA SENTENCE
 SENTENCE IMPOSED/TIME TO SERVE.:   12 YEARS      6 MONTHS


G0002      MORE PAGES TO FOLLOW . . .
```

Case 1:05-cv-11844-WGY    Document 7-2    Filed 01/19/2006    Page 15 of 33

REGNO..: 56285-079 NAME: MURRAY, JAMES
COMP NO: 010      ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS      RESP OF: CBN / GOOD CONDUCT TIME RELEASE
                  PHONE..: 617-565-4293    FAX: 617-565-4297
 TERM OF SUPERVISION............:    60 MONTHS
 DATE OF OFFENSE................: 02-28-1991

-------------------------PRIOR COMPUTATION NO: 010 -------------------------

COMPUTATION 010 WAS LAST UPDATED ON 04-19-2000 AT DEV AUTOMATICALLY

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
PRIOR COMPUTATION 010:   010 010

DATE COMPUTATION BEGAN..........: 04-25-1994
TOTAL TERM IN EFFECT............:    12 YEARS      6 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:    12 YEARS      6 MONTHS
EARLIEST DATE OF OFFENSE........: 02-28-1991

G0002      MORE PAGES TO FOLLOW . . .

REGNO..: 56285-079 NAME: MURRAY, JAMES
COMP NO: 010        ALL CURR COMPS(Y/N): Y    ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS        RESP OF: CBN / GOOD CONDUCT TIME RELEASE
                    PHONE..: 617-565-4293    FAX: 617-565-4297

JAIL CREDIT.....................:    FROM DATE      THRU DATE
                                     11-06-1991     12-03-1991
                                     01-13-1994     04-24-1994

TOTAL PRIOR CREDIT TIME.........: 130
TOTAL INOPERATIVE TIME..........: 0
TOTAL GCT EARNED AND PROJECTED..: 576
TOTAL GCT EARNED................: 576
STATUTORY RELEASE DATE PROJECTED: 11-17-2004
SIX MONTH /10% DATE.............: N/A
EXPIRATION FULL TERM DATE.......: 06-16-2006

TYPE OF HEARING.................: NOT ELIGIBLE

G0002       MORE PAGES TO FOLLOW . . .

Case 1:05-cv-11844-WGY    Document 2-2    Filed 01/19/2006    Page 17 of 33

REGNO..: 56285-079 NAME: MURRAY, JAMES
COMP NO: 010        ALL CURR COMPS(Y/N): Y   ALL PRIOR COMPS(Y/N): Y
FUNC...: DIS        RESP OF: CBN / GOOD CONDUCT TIME RELEASE
                    PHONE..: 617-565-4293    FAX: 617-565-4297

ACTUAL SATISFACTION DATE........: 11-17-2004
ACTUAL SATISFACTION METHOD......: GCT REL
ACTUAL SATISFACTION FACILITY....: CBN
ACTUAL SATISFACTION KEYED BY....: RAD

DAYS REMAINING..................: 576
FINAL PUBLIC LAW DAYS...........: 0

S0039       ALL CURRENT COMPS ARE SATISFIED

# Document 1c

JAMES P. DUGGAN
ATTORNEY AT LAW
160 STATE STREET
BOSTON, MA 02109

TELEPHONE (617) 523-7222
FACSIMILE  (617) 722-0144

November 16, 2004

**BY FIRST CLASS &
CERTIFIED MAIL
RETURN RECEIPT REQUESTED
7099 3220 0007 0226 5826**

RECEIVED
NOV 2 3 2004
ADMINISTRATIVE REMEDY BRANCH

Harley G. Lappin, Director
Federal Bureau of Prisons
320 First Street NW
Washington, DC 20534

> **Re:  James J. Murray, DOB: 2/11/56
> SSN# 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**

Dear Mr. Lappin,

On behalf of my client, James J. Murray, I enclose for your consideration a Claim for Damage, Injury, or Death, Form 95-108.

Thank you for your attention to this matter.

Very truly yours,

James P. Duggan

/jpd

cc:  James J. Murray
     Michael J. Sullivan, United States Attorney
     Robert B. McCallum, Jr., AAG, Civil Division

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVROVED OMB NO. 1105-0008 EXPIRES 6-30-01 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency:<br><br>Harley G. Lappin, Director<br>Federal Bureau of Prisons<br>320 First Street NW<br>Washington, DC 20534 | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, street, city, State and Zip Code)<br><br>James J. Murray<br>c/o James P. Duggan, Atty. at Law<br>160 State St., Boston, MA 02109 |
|---|---|

| 3. TYPE OF EMPLOYMENT<br>MILITARY X CIVILIAN | 4. DATE OF BIRTH<br>2/11/56 | 5. MARITAL STATUS<br>single | 6. DATE AND DAY OF ACCIDENT<br>12/17/02 & continuing | 7. TIME (A.M. OR P.M) |
|---|---|---|---|---|

**8. Basis of Claim** *(State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.)*

The claimant was an inmate at F.M.C. Devens. In May, 2001, he began to experience vision problems with his right eye. The claimant received improper or inadequate medical care over a period of years. He required three (3) surgical procedures. The last occured on December 17, 2002. Post-surgical medications were withheld from the claimant causing him additional pain and suffering. The claimant has previously reported this history to the Bureau of Prisons

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT *(Number, street, city, State, and Zip Code)*

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. *(See instructions on reverse side)*

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT

Permanent loss of vision - right eye
Pain and suffering

| 11. | WITNESSES |
|---|---|
| NAME | ADDRESS *(Number, street, city, State, and Zip Code)* |
| Drs. Maher, Levin & D'Ambrosio<br>Dr. C. Howard | D'Ambrosio Eye Care, Professional Bldg.<br>Suite 2B, 100 Hospital Rd, Leominster,MA   01453-2245<br>FMC Devens, Ayer, MA |

| 12. *(See instructions on reverse)* | AMOUNT OF CLAIM *(in dollars)* | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL *(Failure to specify may cause forfeiture of your rights.)* |
| -0- | $1,500,000.00 | -0- | $1,500,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT *(See instructions on reverse side.)*<br>*James J. Murray* | 13b. Phone number of signatory<br>617-846-5477 | 14. DATE OF CLAIM<br>11/14/04 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant shall forfeit and pay to the United States the sum of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the United States. *(See 31 U.S.C. 3729.)* | Imprisonment for not more than five years and shall be subject to a fine of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the United States. *(See 18 U.S.C.A. 287.)* |

| 95-108<br>Previous editions not usable | NSN 7540-00-634-4046 | STANDARD FORM 95 (Rev. 7-85)<br>PRESCRIBED BY DEPT. OF JUSTICE<br>28 CFR 14.2 |
|---|---|---|

# Document 1d



U.S. Department of Justice

Federal Bureau of Prisons

*Northeast Regional Office*

---

*U.S. Custom House - 7th Floor*
*2nd & Chestnut Streets*
*Philadelphia, PA. 19106*

January 26, 2005

James P. Duggan
Attorney at Law
160 State Street
Boston, MA 02109

Re:  Administrative Tort Claim Dated November 14, 2004
     Filed on Behalf of James Murray, Register No. 56285-079
     Claim No. TRT-NER-2005-01187

Dear Mr. Duggan:

This will acknowledge receipt on November 23, 2004, of the
administrative tort claim you submitted on behalf of James Murray, for
alleged personal injuries and negligence, on or about December 17,
2002 and continuing.

Under the provisions of the Federal Tort Claims Act, 28 U.S.C. 2675,
we have six months from the date of receipt to review, consider, and
adjudicate the claim.  Accordingly, you may expect to hear from us on
or before May 22, 2005.  In order for this office to properly evaluate
this claim, you are required to submit all the information required by
28 C.F.R. §14.4(b).

All correspondence regarding this claim should be addressed to me
at:  Federal Bureau of Prisons, Northeast Regional Office, Room 801,
U.S. Custom House, 2nd & Chestnut Street, Philadelphia, Pennsylvania
19106.  If you have any questions about the status of your claim or if
the circumstances surrounding this claim change in any fashion, you
should contact me immediately.  Also, should your address change, you
should advise me accordingly.

Sincerely,

Henry J. Sadowski
Regional Counsel

cc:  File

# Document 1e



U.S. Department of Justice

Federal Bureau of Prisons
*Northeast Regional Office*

*Via Certified and Return Receipt Mail*

*U.S. Custom House ~ 7th Floor*
*2nd & Chesnut Streets*
*Philadelphia, PA. 19106*

April 12, 2005

James P. Duggan, Attorney at Law
160 State Street
Boston, Massachusetts 02109

RE: Administrative Tort Claim No. TRT-NER-2005-01187
    On Bahalf of James Murray, Reg. No. 56285-079

Dear Mr. Duggan:

This is in response to your Administrative Tort Claim, No.
TRT-NER-2005-01187, filed on behalf of James Murray. The claim
was received by this agency on November 23, 2004, and is being
considered for settlement as provided by the Federal Tort Claims
Act (FTCA) 28 U.S.C. § 2672, under authority delegated to me by
28 C.F.R. § 543.30. Your client seeks compensatory damages in
the amount of $1,500,000.00 for an alleged personal injury.
Specifically, your client claims he did not receive prompt
medical treatment or the appropriate medications for his
Glaucoma condition, causing permanent loss of vision in the right
eye, as well as pain and suffering.

After careful review of your claim, I have decided not to offer a
settlement. Investigation reveals your client first complained
of floaters in the right eye on May 8, 2001. He was seen by the
contract Optometrist and Ophthalmologist on several occasions.
He was administered several types of medications and underwent
Trabeculoplasty surgery. Just prior to his release to a
Community Corrections Center (CCC), on April 14, 2004, your
client was evaluated by the Ophthalmologist, who noted he had a
visual acuity of 20/30 in the right eye and 20/25 in the left
eye. The medical record indicates your client received
appropriate medical treatment for his eye problems, consistent
with community standards. You fail to show that negligence on
the part of any Bureau of Prisons' employee resulted in your
client's alleged injuries.

James P. Duggan, Attorney at Law
RE: James Murray, Reg. No. 56285-079
Claim No. TRT-NER-2005-01187
Page Two


Accordingly, your claim is denied.  If you are dissatisfied with
this decision, you may seek reconsideration from this office or
bring an action against the United States in an appropriate
United States District Court within six (6) months of the date of
this letter.

Sincerely,


Henry J. Sadowski
Regional Counsel

cc: David L. Winn, Warden, FMC Devens

# Document 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| JAMES J. MURRAY, | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case Number |
| | ) | 05-CV-11844-WGY |
| | ) | |
| UNITED STATES, et al., | ) | |
| Defendants. | ) | |

## DECLARATION OF SANDRA L. HOWARD, M.D.

I, SANDRA L. HOWARD, hereby declare and state as follows:

1.  I am employed by the United States Department of Justice, Federal Bureau of Prisons as the Clinical Director, at the Federal Medical Center (FMC), Devens, Massachusetts. I have been employed in this position since February 25, 2001. I have been employed with the Federal Bureau of Prisons since January 22, 1995.

2.  As the Clinical Director, I oversee the medical care provided to inmates incarcerated at FMC Devens. Also, as Clinical Director, I have access to records maintained in the ordinary course of business at FMC Devens.

3.  The factual information set forth in this declaration is obtained from (and summarizes) the medical records maintained by FMC Devens.

4.  James J. Murray, Reg. No. 56285-079, was designated to the Federal Prison Camp (FPC) at Allenwood, Pennsylvania May 18, 1994. On May 25, 1994, Mr. Murray underwent a medical examination. At that time, his visual acuity was 20/25 in each eye.

5.  Mr. Murray was transferred to FMC Devens Camp on October 28, 1998. The medical record indicates that a medical intake screening was completed upon his arrival in the Receiving and Discharge unit by a staff physician.

6.  On December 8, 1999, Mr. Murray underwent a Department of Transportation required physical performed by a mid-level practitioner. His eye examination for his vision tested 20/25 in the right eye and 20/20 in the left eye without corrective lenses. Both eyes tested 20/20 with corrective lenses.

7.  On May 8, 2001, Mr. Murray was seen by a mid-level practitioner for a complaint of floaters in his right eye. He denied any pain, irritation or injury. There were no

significant physical findings on examination of the right eye. An Optometry consult was completed.

8.  On May 22, 2001, Mr. Murray was seen by a mid-level practitioner complaining of photophobia (light sensitivity), floaters, foreign body sensation and blurred vision in the right eye. He felt well otherwise and did not complain of any pain, itching, watering or headache. His visual acuity was 20/30 in the right eye and 20/20 in the left eye. On examination the sclera was white (uninflamed) and there was a positive red reflex from the retinas. The visual fields were full. The optic disc showed sharp margins, no cupping, and no hemorrhages. He was instructed to follow up immediately if the condition persists or worsens in any way.

9.  On June 18, 2001, Mr. Murray was seen by a staff physician for blurred vision in the right eye. An Ishihara Color Test was performed and found to be normal. His visual acuity remained unchanged at 20/30 in the right eye and he had good light pupil accommodation and reaction. The plan was to follow up with Optometry consult previously requested.

10. On September 24, 2001, Mr. Murray was seen be the Contract Optometrist with a complaint of blurry vision in the right eye with spots. He did not have any pain or ache around the eyes or nausea. He stated there was no family history of glaucoma. A refraction for eyeglasses revealed vision correctable to 20/20 in each eye. The right pupil was slightly larger but there was no afferent pupillary defect (indicating an intact nerve pathway). Intraocular pressure was elevated in the right eye (43, 44 mmHg, normal intraocular pressure is up to 20 mmHg). The right optic nerve cup estimation through an undilated pupil appeared larger than the left eye. His diagnosis was glaucoma in the right eye. He recommended evaluation with a Glaucoma Specialist within two weeks or next available and consider fields, photos, and evaluation outside (University of Massachusetts provides FMC Devens with a contractual Ophthalmologist who also provided the contractual Optometrist for FMC Devens). Mr. Murray was educated on the diagnosis of glaucoma, treatment and side effects. According to the medical record, Mr. Murray was dispensed a bottle of glaucoma eye drops (Timolol) that day.

11. On September 24, 2001, a consultation was initiated for Mr. Murray to be seen by the contract Ophthalmologist. Mr. Murray was continued on medical treatment for his elevated intraocular pressures with Timolol.

12. On November 13, 2001, Mr. Murray was seen by the Ophthalmology consultant. His intraocular pressure was 34 mmHg in the right eye. This was decreased from the September 24, 2001 measurement of 43, 44 mmHg while using Timolol. This showed a response to the medical treatment with Timolol. The consultant diagnosed him with open angle glaucoma and suggested further consultation for possible laser surgery in the right eye. The consultant continued treatment with Timolol.

13. On November 15, 2001, a consultation was initiated for the laser surgery of the right eye.

14.  On December 12, 2001, the Assistant Health Services Administrator met with Mr. Murray to discuss Ophthalmology consult, results and recommendations. He was advised and explained of condition (glaucoma). The record indicates that Mr. Murray understood and acknowledged the fact that he was scheduled for laser surgery. He was also oriented on potential complications of not having surgery.

15.  Mr. Murray was originally scheduled to be seen by the Contract Ophthalmologist on December 20, 2001. This appointment was rescheduled for January 15, 2002 at the direction of the contract Ophthalmologist's office.

16.  On January 15, 2002, Mr. Murray was seen by the Contract Ophthalmologist. He underwent laser surgery in the right eye for his glaucoma. He was continued on Timolol and started an additional therapy of steroid eye drops (Pred Forte).

17.  On January 29, 2002, Mr. Murray was seen for a post surgical eye examination by the Contract Ophthalmologist. It was noted he had a good response to the laser surgery with well controlled intraocular pressures (13 mmHg). At this time, a six month follow up examination was scheduled.

18.  On July 15, 2002, Mr. Murray was seen by the Contract Optometrist. This was a six month scheduled follow up examination. At that time, it was noticed that his eye pressures had increased. The Contract Ophthalmologist added a second glaucoma medication (Lumigan). The medical record indicates that this prescription was faxed from the Contract Ophthalmology Office to FMC Devens on July 25, 2002. On July 26, 2002, he was prescribed the formulary equivalent, Latanoprost.

19.  On August 5, 2002, he was seen in follow up by the Contract Optometrist. The medical record indicates that Mr. Murray had "good response" to the additional glaucoma medication of the formulary equivalent, Latanoprost. He recommended that Mr. Murray continue on his prescribed medication regimen.

20.  On August 23, 2002, Mr. Murray was followed up by the Contract Ophthalmologist. It was noted that there was good intraocular pressure reduction post laser surgery and medical therapy. It was also recommended that he be followed by the Contract Optometrist in three months and by the Contract Ophthalmologist in six months. It was recommended that he continue on Timolol eye drops twice a day. There were no other medications specified on the consultation report. The record indicates a prescription was faxed from the Contract Ophthalmologist's Office to FMC Devens on August 30, 2002 for an additional intraocular pressure lowering medication (Alphagan). This prescription was originally written on August 23, 2002 and arrived at FMC Devens without a cover letter from the Contract Ophthalmologist and without any instruction of the indication for this therapy.

21.  On September 23, 2002, Mr. Murray was followed up with the Contract Ophthalmology office. His intraocular pressure in the right eye was elevated, (37 mmHg). The

intraocular pressure in the left eye was normal. An additional glaucoma medication was ordered (Alphagan) by the Contract Ophthalmology office with specific instructions. Mr. Murray was dispensed Alphagan eye drops on September 24, 2002.

22.    On the September 23, 2002 consultation there is a note dated September 25, 2002 stating that the Contract Optometrist discussed Mr. Murray's case with the Contract Ophthalmologist. The recommendation was that Mr. Murray needed a surgical procedure in the right eye.

23.    On October 15, 2002, Mr. Murray underwent a Trabeculectomy (filtering surgical procedure) in the right eye by the Contract Ophthalmologist. Mr. Murray returned to the institution the same day with a post operative kit including initial eye drops.

24.    On October 16, 17, 18, 21, and 24, 2002, Mr. Murray was seen for post operative visits by Contract Ophthalmology office. Intraocular pressure in the right eye was low and medications were adjusted according to the findings at each visit. All glaucoma medications were discontinued for the right eye on October 16, 2002 by the Contract Ophthalmologist. However, Timolol was continued for the left eye. At this time, he was continued on Acular, Atropine, and Pred Forte eye drops. On October 17, 2002, Mr. Murray was administered Atropine, Ocuflox, and Pred Forte by the Contract Ophthalmologist in his office. On October 21, 2002, he was advised to continue all of his current medications and was cautioned not to rub his right eye and to wear a safety shield at bed time. On October 24, 2002, the pre-operative findings showed a pressure in the right eye of three and all medications were continued.

25.    On October 29, 2002, Mr. Murray was moved from the FMC Devens Camp to the Federal Medical Center because there was an increase in the frequency of medical trips and several therapy changes.

26.    On October 31, 2002, Mr. Murray was seen by the Contract Optometrist. Mr. Murray was noted to have an increased intraocular pressure in the right eye (30 mmHg). Massaging the eye decreased the pressure to 19 mmHg. A cyst in the right eye surgical site was noted. Mr. Murray was instructed in digital massage of the right eye to help control the intraocular pressure. Also, the Contract Optometrist discontinued the following medications: Polymixin B, Atropine and Acular.

27.    Mr. Murray was seen on November 8, 13, 20, and December 8, 2002 at the Contract Ophthalmology Office. At each visit, the intraocular pressure was elevated and was responding less to digital massage. On November 20, 2002, he continued the Pred Forte and discontinued Timoptic eye drops to the right eye. He added Cosopt eye drops and continued Alphagan P to the right eye with continued digital massage. On December 8, 2002, a decision was made to perform a revision of the surgical site and removal of a "traumatic bleb." No history of trauma other than surgical was noted.

28.    On December 17, 2002, Mr. Murray underwent a revision and removal of a "traumatic

bleb" in the right eye. This procedure was performed by the Contract Ophthalmologist. Post operative glaucoma medications for the right eye which included Cosopt and Alphagan were discontinued on this date. He returned to the institution with a post operative kit including eye drops.

29.    On December 18, 19, 23, 27, and 30, 2002, Mr. Murray was seen for post operative visits at the Contract Ophthalmology Office. It was noted that his intraocular pressures were low. He was maintained on glaucoma medication (Timolol) and steroid eye drops (Pred Forte).

30.    On January 2, 2003, Mr. Murray was seen at the Contract Ophthalmology Office. His intraocular pressure was elevated (22 mmHg). With digital massage the pressure was reduced to 13 mmHg.

31.    On January 6, 2003, Mr. Murray was seen at the Contract Ophthalmology Office. The intraocular pressure was elevated (31 mmHg). However, this time it was unresponsive to digital massage. Alphagan eye drops were prescribed and dispensed on January 7, 2003.

32.    On January 7, 2003, Mr. Murray was seen by the BOP Staff Ophthalmologist. Mr. Murray completed an Ophthalmology health history form in which he indicated no family history of glaucoma. Intraocular pressure was normal in both eyes (16 mmHg in the right eye and 13 mmHg in the left eye). The following medications were continued: Timolol, Alphagan and Pred Forte.

33.    On January 14, 2003, Mr. Murray was seen at the Contract Ophthalmology Office. The intraocular pressure was elevated (25, 24 mmHg). Digital massage performed by the Contract Ophthalmologist resulted in a normal intraocular pressure (16 mmHg). Mr. Murray was instructed to continue digital massage and the same medications.

34.    On January 29, 2003, Mr. Murray was seen at the Contract Ophthalmology Office. Intraocular pressure was elevated (31 mmHg) which decreased after digital massage to 25 mmHg. Pred Forte was discontinued and Acular eye drops were added. He was instructed to continue with digital massage to maintain a decreased intraocular pressure in the right eye.

35.    On February 21, 2003, Mr. Murray was seen by the BOP Staff Ophthalmologist. Intraocular pressures (14 mmHg in the right eye and 16 mmHg in the left eye) remained normal and all medications were continued.

36.    On March 25, 2003, Mr. Murray was seen by the BOP Staff Ophthalmologist. Intraocular pressure in the right eye was 4 mmHg and 14 mmHg in the left eye. It was noted that he maintained a good filter bleb in the right eye.

37.    On April 18, 2003, Mr. Murray was transferred back to the FMC Devens Camp because he had maintained very stable intraocular pressures since his revision surgery in

December, 2002.

38.    On April 30, 2003, Mr. Murray was seen by the BOP Staff Ophthalmologist. Visual acuity without eye glasses was 20/40 in the right eye and 20/25 in the left eye. Visual acuity was correctable with eye glasses to 20/30 in the right eye and 20/20 in the left eye. The examination also reconfirmed an open anterior chamber angle in the left eye. Intraocular pressures were 4 mmHg in the right eye and 12 mmHg in the left eye. He was instructed that digital massage was no longer needed. Mr. Murray requested possibly using only one eye drop (Timolol) for his glaucoma. After a lengthy discussion of risks, benefits and side effects it was agreed to discontinue Alphagan and to continue to follow for any changes.

39.    On June 6, 2003, Mr. Murray was seen by the BOP Staff Ophthalmologist. Visual acuity was 20/30 in the right eye and 20/20 in the left eye. A gonioscopy performed on the right eye reconfirmed an open anterior chamber angle. Intraocular pressures were 6 mmHg right eye and 11 mmHg left eye. Timolol eye drops were continued. The plan was to recheck the intraocular pressure in two months.

40.    On July 11, 2003, Mr. Murray was seen by the BOP Staff Ophthalmologist. A good post operative filter bleb was noted in the right eye. Intraocular pressures were 6 mmHg right eye and 11 mmHg left eye. Timolol eye drops were continued. The plan was to recheck the pressure in three months.

41.    On August 21, 2003, the Timolol eye drops were renewed.

42.    On October 24, 2003, Mr. Murray was seen by the BOP Staff Ophthalmologist. A good post operative filter bleb was noted in the right eye. Intraocular pressures were 14 mmHG in the right eye and 16 mmHg in the left eye. His glaucoma was well controlled and he was continued on Timolol.

43.    On February 26, 2004, the Timolol eye drops were renewed.

44.    On April 14, 2004, Mr. Murray was seen by the BOP Staff Ophthalmologist. His visual acuity without eye glasses was 20/30 in the right eye and 20/25 in the left eye. Intraocular pressures were stable and well controlled (9 mmHg in the right eye and 17 mmHg in the left eye). He was instructed to continue Timolol eye drops twice a day in both eyes. He was also instructed to follow up with an Ophthalmologist within three to four months.

45.    On May 24, 2004, Mr. Murray was released from FMC Devens Camp with a furlough transfer to a halfway house. He was issued Timolol eye drops with instructions to apply one drop to both eyes twice a day.

I declare under penalty of perjury and pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

Executed this 14th day of December, 2005.

Sandra L. Howard, M.D.
Clinical Director
Federal Medical Center
Devens, Massachusetts