UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2006 MAR 14 P 12: 47

U.S. DISTRICT COURT
DISTRICT OF MASS.

CIVIL ACTION NO.
05CA11844-WGY

James J. Murray, )
          Plaintiff )
 )
v. )
 )
United States of America and )
Harley G. Lappin, as he is )
Director, Federal Bureau of )
Prisons, and Michael J. )
Sullivan, as he is United )
States Attorney for the District )
of Massachusetts, )
          Defendants )

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
TO DISMISS, OR IN THE ALTERNATIVE, FOR
SUMMARY JUDGMENT**

The Plaintiff, James J. Murray, hereby states his opposition
to the Defendants' Motion to Dismiss, or in the Alternative, for
Summary Judgment, and moves this Court for an Order denying the
same.  In support of his opposition, the Plaintiff says as
follows:

**STATEMENT OF FACTS[1]**

On April 25, 1994, Murray was sentenced by this Court to a

---

[1]The facts of this case are drawn from Plaintiff's
Complaint, the Exhibits attached thereto, the Affidavit of James
J. Murray, and the Medical Report of Dr. A. Joseph Rudick.

1

prison term of twelve (12) years, see Docket No. 91-10305-05-WGY.
He was placed in the custody of the Federal Bureau of Prisons.
In October, 1998, Murray was placed in the Federal Prison Camp at
Devens, Massachusetts. He remained in custody there until May
24, 2004.

On May 8, 2001, Murray reported to the medical staff at FMC
Devens that he was experiencing vision problems with his right
eye. At this time, FMC Devens had no Optometrist, or
Ophthalmologist, on staff. Murray was seen by a physician's
assistant[2]. No eye tests or fundus examinations were conducted
at this time. This failure represents a departure from the
accepted standard of care for a patient presenting with
unilateral eye complaints and a dilated pupil.

Murray was not seen by a physician at FMC-Devens until June
18, 2001. At that time, Murray was informed that his vision
problems would be corrected with eye glasses.

Murray's vision worsened. Finally, on September 24, 2001,
four (4) months after reporting his vision problems, Murray was
seen by Dr. Thomas Maher of the D'Ambrosio Eye Care Center. FMC-
Devens contracted with D'Ambrosio to provide optometrical care to
inmates. Dr. Maher immediately diagnosed Murray as suffering
from glaucoma. Maher recommended that Murray be seen by a
specialist. Murray was returned to FMC-Devens, however, and was
not scheduled for examination by the specialist until November

---

[2]The Government prefers to style the "physician's assistant"
as a "mid-level practitioner", see Declaration of Sandra L.
Howard, M.D. dated December 14, 2005, Document 2, attached to
Defendant's Memorandum of Law. In any event, Murray was not seen
by a doctor until June 18, 2001, nearly six (6) weeks after his
initial report.

2

13, 2001. This delay of two (2) months represents a further
deviation from the standard of medical care applicable to
glaucoma patients which requires that they be treated within a
week or two for measurement of eye pressure(s).

On November 13, 2001, Murray was seen by a glaucoma
specialist at the D'Ambrosio Eye Care Center. The specialist
concluded that Murray should undergo surgery (a so-called
Trabeculoplasty) immediately. Surgery was delayed until January
15, 2002, a period of another two (2) months. Again, this delay
represented a further deviation from the standard of medical
care.

Murray submits that at all material times, his medical care
was controlled by the Bureau of Prisons, FMC-Devens.

On January 29, 2002, Murray was returned to the D'Ambrosio
Eye Care Center for a post-surgical eye examination. At that
time, D'Ambrosio indicated that Murray should be seen again in
three (3) months time, that is by April 30, 2002. FMC-Devens
failed to cause, or conduct, such a re-examination. It was not
until July 15, 2002, nearly six (6) months after his post-
surgical examination, that Murray was returned to the D'Ambrosio
Eye Clinic. Murray's condition had worsened. He was prescribed
Lumigan. Despite medical orders, FMC-Devens failed to dispense
Murray's medicine until July 26, 2002. The failure to
immediately dispense prescribed medicine represents a further
deviation from the applicable standard of medical care.

On August 23, 2002, the D'Ambrosio Eye Care Center ordered
that Murray receive a prescription for Alphagan. Murray did not
receive his medication until September 24, 2002, one (1) month
later, and at that time, only received his prescription because

3

of the direct intervention of Dr. Maher of the D'Ambrosio Eye
Care Center. Again, the failure to dispense prescribed
medication is in violation of the applicable standard of medical
care and violates FMC-Devens own Statement of Patient Rights
which says, in pertinent part:

*You have the right to receive prescribed medications and*
*treatments in a timely manner consistent with the*
*recommendations of the prescribing health care provider.*

On the same date that Dr. Maher intervened and demanded that
FMC-Devens issue Murray his prescription for Alphagan, it was
determined that Murray needed a second Trabeculoplasty. This was
undertaken on October 15, 2002. Additional surgery was done on
December 17, 2002. Medical records indicate that, for the third
time, FMC-Devens had failed to administer prescribed medications
to Murray. At this point, Murray's surgeon, Dr. Francis
D'Ambrosio, Jr., M.D. instructed Devens as to the importance of
administering medications in a timely fashion.

On January 7, 2003, Murray was seen by Dr. C. Howard, a
staff Ophthalmologist at FMC-Devens. Howard informed Murray that
"unfortunately, we can't do anything about the damage that's
already been done to your right eye Mr. Murray... that's
permanent, but we can try to prevent you from losing any more of
your eyesight".

Next, Murray saw Dr. D'Ambrosio on January 29, 2003. At
that time, he was prescribed eye drops and was told to perform
digital massage. He was not seen again by D'Ambrosio until
September 11, 2004, a period of nearly eighteen (18) months.

4

Murray was released from Devens on May 24, 2004, and was in custody at a halfway house until October, 2004. He remains on supervised release to this date.

On November 16, 2004, Murray gave Notice of his Claim for Damage, Injury or Death, see Form 95-108, Exhibit "A" and "A-1", attached to Plaintiff's Complaint.

On January 26, 2005, Murray's claim was acknowledged and he was informed that the Government had six (6) months to review, consider and adjudicate his claim. On April 7, 2005, Murray supplemented his claim with the Bureau of Prisons, see letter dated April 7, 2005.

On April 12, 2005, Murray's claim was administratively denied. Under the Federal Tort Claims Act Murray had six (6) months from that date to file a Complaint with the United States District Court. The instant Complaint was filed on September 12, 2005.

## LEGAL ARGUMENT

The Government argues that Murray's Complaint is barred by the applicable Statute of Limitations. As noted above, Murray's claim was presented on November 16, 2004, (presentment is completed upon mailing) therefore, if Murray knew, or should have known, prior to November 16, 2002, that he had a claim against the Government, his Complaint should be dismissed.

Murray concedes that his treatment began on May 8, 2001 when he presented to the "physician's assistant" at Devens and

5

reported his vision problems. However, it was not until, at the
earliest, January 7, 2003, when he was informed by Dr. Howard
that he had suffered permanent damage to his right eye that
Murray could be said to be charged with the kind of knowledge
which would trigger the statute of limitations for a medical mal-
practice claim. Clearly, having filed his claim on November 16,
2004, he is within the two (2) year statute.

Following presentment of his claim, Murray submitted
additional information for the Government's consideration per 28
C.F.R. §14.4(b).

From the date of the Government's denial of his claim,
Murray had six (6) months to file his Complaint. In this case,
his Complaint must be filed on or before October 12, 2005. The
docket reflects the Complaint was filed on September 12, 2005.

Secondly, the Government argues that Murray's Complaint
should be dismissed because the United States is not liable for
the alleged negligence of a Non-Governmental medical
practitioner. In support of its argument, the Government
contends "the contract ophthalmology office, not the BOP,
controlled the type of medical care they rendered to the
Plaintiff". Memorandum, at Page 12. This is true but
irrelevant. Murray does not contend that the D'Ambrosio Eye Care
Center, or its physicians, Maher and D'Ambrosio, malpracticed in
any way. In fact, Murray believes he received excellent medical
care from D'Ambrosio. His suit, however, is for the negligence
of FMC-Devens, and its numerous and repeated failures to provide
him with adequate, continuing medical care.

The negligence imputed to FMC-Devens is as follows:

6

1.   Devens has published the following Mission Statement:

> *The health care mission of FMC Devens, is to*
> *provide necessary medical, dental and mental*
> *health services to inmates by competent,*
> *professional staff, consistent with acceptable*
> *community standards.*

Devens did not have competent professional staff during
Murray's incarceration there.  As noted above, Devens
opened on October 27, 1998.  It did not have an
Optometrist, or Ophthalmologist, on staff until
November, 2002, a period of four (4) years.

2.   Even the staff which Devens did have treated Murray
negligently.  The "physician's assistant", or "mid-
level practitioner", as the Government would say, did
not cause eye pressure tests, or fundus examinations to
be performed.  The physician's assistant essentially
did nothing except refer Murray to a physician.  The
physician who saw Murray on June 18, 2001, six (6)
weeks later, conducted a cursory examination and
concluded Murray needed eye glasses!  Murray was not
referred to a specialist until September 24, 2001, four
(4) months after reporting his vision problems.  The
specialist immediately concluded Murray suffered from
glaucoma.  Had the Government provided competent staff,
or had it made a timely referral to its own "contract
ophthalmologist", Murray's condition would have been
accurately diagnosed in May, 2001, and immediate, and
appropriate treatment could have been undertaken.

3.   Assuming that the Government could delegate the
responsibility for medical care to the D'Ambrosio Eye

7

Care Clinic (the Plaintiff submits the Government may
not delegate its responsibility to provide adequate
medical care to an inmate) it still has the
responsibility to follow the recommendations of its own
expert(s). The repeated delays in obtaining and
dispensing prescribed medicines to Murray is evidence
of the Government's own negligence. Its repeated
failure to obtain timely medical care for Murray
corroborates his claim of FMC-Devens' malpractice.

The Government has moved to dismiss the Plaintiff's
Complaint, or grant Summary Judgment, in its favor.

When ruling on a Motion to Dismiss, the facts should be
considered in the light most favorable to the Plaintiff, Muniz-
Rivera v. United States, 326 F.3d 8, 11 (1st Circuit 2003). Said
facts should be drawn from the Complaint, and any supplementary
materials submitted to the Court. Gonzalez v. United States, 284
F.3d 281, 288 (1st Circuit 2002).

The Court should treat as true all well-pleaded facts and
all reasonable inferences drawn therefrom. Valentin v. Hospital
Bella Vista, 254 F.3d 358, 363 (1st Circuit 2002).

Summary Judgment is allowed if, and only if, after reviewing
the facts in the light most favorable to the non-moving party,
the Court concludes no genuine issues of material fact remain,
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). A
fact is material when it "might affect the outcome of the suit
under the governing law". Anderson, at 248; Haze v. Douglas
Dynamics, Inc., 8 F3d. 88, 90 (1st Circuit 1993). The Court must
view the evidence in the light most favorable to the non-moving

8

party and must draw all reasonable inferences in its favor. Id.

Whether treated as a Motion to Dismiss or Summary Judgment, the Government's principle arguments are easily stated:

1.  The Plaintiff's Complaint is barred by the Statute of Limitations; and

2.  The Plaintiff cannot proceed under the Tort Claims Act which precludes a suit against any contractor of the United States.

The Federal Tort Claims Act, 28 U.S.C. §2401(b) requires that an administrative claim be presented within two (2) years from the date a claim has accrued.

A tort claim accrues at the time of injury, see Gonzalez, 284 F.3d at 288. However, in United States v. Kubrick, 444 U.S. 111 (1979), the Supreme Court created a "discovery rule" exception for F.T.C.A. Claims involving medical malpractice. The Supreme Court held that medical malpractice claims accrue when a Plaintiffs knows of both the existence and cause of his injury. Id. at 119-202. The First Circuit has defined the "factual basis" of a claim as "the injury and its probable cause" Gonzalez 284, F.3d at 289.

"A claim does not accrue when a person has a mere hunch, hint, suspicion, or rumor of a claim, but such suspicions do give rise to a duty to inquire into the possible existence of a claim in the exercise of due diligence." Kronisch v. United States, 150 F.3d 112, 121 (2nd Circuit 1998).

9

In the case-at-bar, Murray contends that he did not know
that he had suffered an injury, that is permanent loss of his
vision, until he was so informed by Dr. Howard on January 7,
2003.

As to the Government's claim that it is not responsible for
the negligence of its contractors, as noted above, the Plaintiff
concedes the same. However, this suit is not brought because the
D'Ambrosio Eye Care Center was negligent, but because the staff
at FMC-Devens was negligent. It was FMC-Devens staff which
failed to obtain and dispense Murray's prescriptions. It was
FMC-Devens staff which failed to schedule regular medical
examinations, or seasonable eye tests. In sum, the Complaint
stands against FMC-Devens for its own acts and omissions.

The FTCA grants jurisdiction for claims that are "caused by
the negligent or wrongful act or omission of any employee of the
government, while acting within the scope of his office or
employment" under state law. 28 U.S.C. § 1346(b). Under
Massachusetts law, conduct is within the scope of employment if
(1) "it is of the kind [the agent] is employed to perform;" (2)
"it occurs substantially within the authorized time and space
limits;" and (3) "it is motivated, at least in part, by a purpose
to serve the employer." Wang Labs., Inc. v. Business Incentives,
Inc., 398 Mass. 854, 859 (1986). "The scope of an employee's
employment," according to the Supreme Judicial Court, "is not
construed restrictively." Howard v. Town of Burlington, 399 Mass.
585, 590 (1987).

Murray contends that staff at FMC-Devens was acting within
the scope of [their] office or employment. After all, the very
name of the institution housing Murray was the "Federal Medical

10

Center", its own "Mission Statement" describes, *"The health care mission of FMC Devens, is to provide necessary medical, dental and mental health services to inmates by competent, professional staff, consistent with acceptable community standards".*

It beggars belief that, on the facts of this case, one could conclude that staff at FMC-Devens were not acting within the scope of their employment.

Lastly, the Plaintiff agrees that the action is a suit against the United States and is not brought personally against the Director of the Bureau of Prisons, or the United States Attorney for the District of Massachusetts, both of whom were named only for the purposes of directing service of process to the proper authorities, and/or agencies.

## CONCLUSION

For all of the foregoing reasons, the Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, should be denied.

Respectfully submitted,
James J. Murray,
by his attorney,

James P. Duggan
BBO# 137500
160 State Street
8th Floor
Boston, MA 02109
617-523-7222

11

**CERTIFICATE OF SERVICE**

I, James P. Duggan, hereby certify that I have this 13th day of March, 2006, served a copy of the foregoing Opposition to Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, by first class mail, to Christopher R. Donato, Assistant United States Attorney, John Joseph Moakley Courthouse, 1 Courthouse Way, Boston, MA, 02210.

James P. Duggan

12