FILED
IN CLERKS OFFICE
UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
2006 MAR 14 P 12: 47

U.S. DISTRICT COURT
DISTRICT OF MASS.

**CIVIL ACTION NO.
05CA11844-WGY**

| | |
|---|---|
| James J. Murray,<br>　　　　Plaintiff | )<br>)<br>) |
| v. | )<br>) |
| United States of America and<br>Harley G. Lappin, as he is<br>Director, Federal Bureau of<br>Prisons, and Michael J.<br>Sullivan, as he is United<br>States Attorney for the District<br>of Massachusetts,<br>　　　　Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### PLAINTIFF'S EXHIBITS IN SUPPORT OF OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Now comes the Plaintiff, James J. Murray, who hereby offers the following Exhibits in support of his Opposition to Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment:

1. Complaint and Demand for Jury Trial, with attached Exhibits "A", "A-1" and "B";

2. Letter dated January 26, 2005, Sadowski to Duggan;

3. Letter dated April 7, 2005, Duggan to Sadowski;

4. Affidavit of James J. Murray, dated March 13, 2006;

5. Medical Report, Associate Ophthalmologist, P.C., A. Joseph Rudick, M.D.

6.    Mission Statement, FMC-Devens; and

7.    Patient Rights and Responsibilities, FMC-Devens.

Respectfully submitted,
James J. Murray,
by his attorney,

James P. Duggan
BBO# 137500
160 State Street
8th Floor
Boston, MA 02109
617-523-7222

## CERTIFICATE OF SERVICE

I, James P. Duggan, hereby certify that I have this 13th day
of March, 2006, served a copy of the foregoing Plaintiff's
Exhibits in Support of Opposition to Defendants' Motion to
Dismiss, or in the Alternative, for Summary Judgment, by first
class mail, to Christopher R. Donato, Assistant United States
Attorney, John Joseph Moakley Courthouse, 1 Courthouse Way,
Boston, MA, 02210.

James P. Duggan

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

James J. Murray,        )
          Plaintiff     )
                        )
v.                      )
                        )
United States of America and     )      **CIVIL ACTION NO.**
Harley G. Lappin, as he is       )
Director, Federal Bureau of      )
Prisons, and Michael J.          )
Sullivan, as he is United        )
States Attorney for the District )
of Massachusetts,                )
          Defendants             )  **05 CA 11844 WGY**

**COMPLAINT AND JURY DEMAND**

**PARTIES**

1.  The Plaintiff, James J. Murray, herein after "Murray" or
    "the Plaintiff" is a natural person over the age of eighteen
    (18) years who resides at 113 Upland Road, Winthrop, Suffolk
    County, Commonwealth of Massachusetts.

2.  The Defendant, the United States of America, is named herein
    pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346
    and 2671 et seq.  This suit arises from the negligent acts
    and omissions of agents, servants and employees of the
    Federal Bureau of Prisons, an agency of the United States
    Government.  It is alleged that the Bureau's agents,
    servants and employees, at all material times, were acting
    within the scope of their office or employment.

3.  Harley G. Lappin is the Director of the Federal Bureau of
    Prisons, an constituent agency found within the United
    States Department of Justice.  Mr. Lappin's address is
    Federal Bureau of Prisons, 320 First Street, NW, Washington,
    D.C., 20534.

4.  Michael J. Sullivan is the United States Attorney for the
    District of Massachusetts.  Mr. Sullivan's legal address is
    John Joseph Moakley Courthouse, Suite 9200, 1 Courthouse
    Way, Boston, MA, 02210.

### JURISDICTION AND VENUE

5.  This action seeks recovery of damages under the Federal Tort
    Claims Act, 28 U.S.C. § 2671 et seq. ("FTCA")

6.  The Plaintiff has satisfied the jurisdictional pre-
    requisites required by 28 U.S.C. § 2675. Specifically, the
    Plaintiff presented a Claim for Damage, Injury or Death to
    the Federal Bureau of Prisons on November 16, 2004, see
    attached Exhibit "A".

7.  Plaintiff's Claim was denied by the Federal Bureau of
    Prisons on April 12, 2005, see attached Exhibit "B".

8.  Venue is proper in the District of Massachusetts, see 28
    U.S.C. § 1391, because a substantial part of the events,
    acts, and omissions giving rise to this action occurred in
    the District of Massachusetts.

### FACTS

9.  On April 25, 1994, the Plaintiff was sentenced by the United
    States District Court (District of Massachusetts) for
    conspiracy to possess marijuana. The Plaintiff was
    sentenced to a prison term of twelve (12) years, to be
    followed by five (5) years of supervised release, and the
    payment of a fine in the amount of $17,500.00. See, Docket
    No. 91-10305-05-WGY.

10. Accordingly, the Plaintiff was placed in the custody of the
    Federal Bureau of Prisons.

11. The Federal Bureau of Prisons is a constituent agency of the
    United States Department of Justice and is subject to
    oversight and direction from the Attorney General of the
    United States.

12. From May, 1994 through October, 1998, the Plaintiff was in
    custody at Allenwood, Pennsylvania. On or about October 28,
    1998, the Plaintiff was transferred to the newly opened
    Federal Prison Camp at Devens, Massachusetts. He remained
    there until May 24, 2004.

13. The Federal Bureau of Prisons, and in particular the Federal
    Medical Center - Devens, has published the following
    "Mission Statement":

> The health care mission of FMC Devens, is to provide
> necessary medical, dental and mental health services to
> inmates by competent, professional staff, consistent
> with acceptable community standards.

14. On May 8, 2001, the Plaintiff reported to the staff at FMC-Devens that he was experiencing vision problems with his right eye. He complained of photophobia and "floaters". By May 22, 2001, staff at FMC-Devens noted his right pupil was dilated.

15. At this time, FMC-Devens did not have an Optometrist, or Ophthalmologist, on staff.

16. From May 8, 2001 through September 24, 2001, the Plaintiff was treated at FMC-Devens. Initially, the Plaintiff was treated by a "physician's assistant". During this period, the Bureau of Prisons, through its agents, servants or employees, negligently and carelessly and unskillfully failed to properly evaluate and examine the Plaintiff. Specifically, no eye pressure tests were given and no fundus examination was performed. It is a departure from the standard of medical care not to fully evaluate a patient who presents with unilateral eye complaints and a dilated pupil.

17. On June 18, 2001, the Plaintiff was informed by staff at FMC-Devens that his vision problems would be corrected with glasses.

18. During the Summer of 2001, the Plaintiff's vision problems continued. Finally, on September 24, 2001, some four (4) months after reporting his vision problems, the Plaintiff was seen by Dr. Thomas Maher of the D'Ambrosio Eye Care Center. The D'Ambrosio Eye Care Center contracts with the FMC-Devens to provide eye care for prisoners. On examination, Dr. Maher immediately referred the Plaintiff to a glaucoma specialist. This referral was not accomplished until November 13, 2001, a period of nearly two (2) months. This delay represented a further deviation from the standard of medical care which requires that newly diagnosed cases of glaucoma be treated within one (1) to two (2) weeks for measurement of pressure on therapy and visual fields.

19. On November 13, 2001, the D'Ambrosio Eye Clinic confirmed the Plaintiff's glaucoma diagnosis and indicated that a Trabeculoplasty should be performed on the Plaintiff's right eye immediately. Surgery was delayed for a period of nearly two (2) months, that is until January 15, 2002. This delay represented a further deviation from the applicable standard of medical care.

20. The Plaintiff's medical care was controlled by the Bureau of Prisons, FMC-Devens, until May 24, 2004.

21. The Plaintiff never received medical care consistent with community standards, or the Bureau's own regulations. For

example, on several occasions, the Plaintiff was prescribed eye medications including "Lumigan" and "Alphagan P". FMC-Devens failed to dispense these medicines in a timely manner. This represents a further deviation from the applicable standard of medical care, and those Patient Rights acknowledged by FMC-Devens:

> *You have the right to receive prescribed medications and treatments in a timely manner consistent with the recommendations of the prescribing health care provider.*

22. Additionally, from May of 2001 through May of 2004, FMC-Devens should have monitored the Plaintiff with repeated so-called "visual fields". This was not done. This represents a further deviation from the standard of medical care.

23. The Plaintiff has suffered permanent damage to his optic nerve.

24. As a direct and proximate result of the negligent acts and omissions attributable to the Defendant, its agents, servants and employees, the Plaintiff has lost vision in his right eye, has endured great pain and suffering of mind and body, has suffered poor health, and has incurred, and will incur, expenses for medical treatment.

WHEREFORE, the Plaintiff, James J. Murray, demands judgement against the United States of America for damages and costs and for such other relief as the Court deems meet and just in these circumstances.

Respectfully submitted,
James J. Murray,
by his attorney,

James P. Duggan
BBO# 137500
160 State Street
8th Floor
Boston, MA 02109
617-523-7222

**PLAINTIFF DEMANDS A TRIAL BY JURY**

**JAMES P. DUGGAN**
ATTORNEY AT LAW
160 STATE STREET
BOSTON, MA 02109

TELEPHONE (617) 523-7222
FACSIMILE  (617) 722-0144

November 16, 2004

**BY FIRST CLASS &**
**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
**7099 3220 0007 0226 5826**

Harley G. Lappin, Director
Federal Bureau of Prisons
320 First Street NW
Washington, DC 20534

      **Re:  James J. Murray, DOB: 2/11/56**
             **SSN# 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**

Dear Mr. Lappin,

On behalf of my client, James J. Murray, I enclose for your
consideration a Claim for Damage, Injury, or Death, Form 95-108.

Thank you for your attention to this matter.

Very truly yours,

*James P. Duggan*

James P. Duggan

/jpd

cc:  James J. Murray
      Michael J. Sullivan, United States Attorney
      Robert B. McCallum, Jr., AAG, Civil Division

"*A*"

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROROVED OMB NO. 1105-0008 EXPIRES 6-30-01 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency: | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, street, city, State and Zip Code) |
|---|---|
| Harley G. Lappin, Director<br>Federal Bureau of Prisons<br>320 First Street NW<br>Washington, DC 20534 | James J. Murray<br>c/o James P. Duggan, Atty. at Law<br>160 State St., Boston, MA 02109 |

| 3. TYPE OF EMPLOYMENT<br>MILITARY X CIVILIAN | 4. DATE OF BIRTH<br>2/11/56 | 5. MARITAL STATUS<br>single | 6. DATE AND DAY OF ACCIDENT<br>12/17/02 & continuing | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.)

The claimant was an inmate at F.M.C. Devens. In May, 2001, he began to experience vision problems with his right eye. The claimant received improper or inadequate medical care over a period of years. He required three (3) surgical procedures. The last occured on December 17, 2002. Post-surgical medications were withheld from the claimant causing him additional pain and suffering. The claimant has previously reported this history to the Bureau of Prisons

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, street, city, State, and Zip Code)

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See instructions on reverse side)

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT

Permanent loss of vision - right eye
Pain and suffering

| 11. | WITNESSES | |
|---|---|---|
| NAME | ADDRESS (Number, street, city, State, and Zip Code) | |
| Drs. Maher, Levin & D'Ambrosio<br>Dr. C. Howard | D'Ambrosio Eye Care, Professional Bldg.<br>Suite 2B, 100 Hospital Rd, Leominster, MA 01453-2245<br>FMC Devens, Ayer, MA | |

| 12. (See instructions on reverse) | AMOUNT OF CLAIM (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
| -0- | $1,500,000.00 | -0- | $1,500,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.)<br>James J. Murray | 13b. Phone number of signatory<br>617-846-5477 | 14. DATE OF CLAIM<br>11/14/04 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM<br>The claimant shall forfeit and pay to the United States the sum of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the United States. (See 31 U.S.C. 3729.) | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS<br>Imprisonment for not more than five years and shall be subject to a fine of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the United States. (See 18 U.S.C.A. 287.) |
|---|---|

| 95-108<br>Previous editions not usable | NSN 7540-00-634-4046 | STANDARD FORM 95 (Rev. 7-85)<br>PRESCRIBED BY DEPT. OF JUSTICE<br>28 CFR 14.2 |
|---|---|---|

"A-1"

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.

C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.

D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## INSTRUCTIONS

### Complete all items – Insert the word NONE where applicable

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF

Any instructions or information necessary in the preparation of your claim will be furnished, upon request, by the office indicated in item #1 on the reverse side. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplemental regulations also. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with said claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file claim for both personal injury and property damage, claim for both must be shown in item #12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT, THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

(b) In support of claims for damage to property which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to completely execute this form or to supply the requested material within two years from the date the allegations accrued may render your claim "invalid". A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

Failure to specify a sum certain will result in invalid presentation of your claim And may result in forfeiture of your rights.

Public reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or other aspect of this collection of information, including suggestions for reducing this burden,

to Director, Torts Branch
Civil Division
U.S. Department of Justice
Washington, DC 20530

and to the
Office of Management and Budget
Paperwork Reduction Project (1105-0008)
Washington, DC 20503

## INSURANCE COVERAGE

In order that subrogation claims be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

| 15. Do you carry accident insurance? Yes, if yes give name and address of insurance company (*Number, street, city, State, and Zip Code*) and policy number. X No |
|---|

| 16. Have you filed claim on your insurance carrier in this instance, and if so, is it full coverage or deductible? | 17. If deductible, state amount |
|---|---|

| 18. If claim has been filed with your carrier, what action has your insurer taken or proposes to take with reference to your claim? (*It is necessary that you ascertain these facts*) |
|---|

| 19. Do you carry public liability and property damage insurance? Yes, If yes, give name and address of insurance carrier (*Number, street, city, State, and Zip Code*) X No |
|---|

SF 95 (Rev. 7-85) BACK

* U.S. GOVERNMENT PRINTING OFFICE: 1989–241-175

"A-2"



Federal Bureau of Prisons
*Northeast Regional Office*

<u>*Via Certified and Return Receipt Mail*</u>

*U.S. Custom House - 7th Floor*
*2nd & Chestnut Streets*
*Philadelphia, PA. 19106*

April 12, 2005

James P. Duggan, Attorney at Law
160 State Street
Boston, Massachusetts 02109

RE: Administrative Tort Claim No. TRT-NER-2005-01187
    On Bahalf of James Murray, Reg. No. 56285-079

Dear Mr. Duggan:

This is in response to your Administrative Tort Claim, No.
TRT-NER-2005-01187, filed on behalf of James Murray.  The claim
was received by this agency on November 23, 2004, and is being
considered for settlement as provided by the Federal Tort Claims
Act (FTCA) 28 U.S.C. § 2672, under authority delegated to me by
28 C.F.R. § 543.30.  Your client seeks compensatory damages in
the amount of $1,500,000.00 for an alleged personal injury.
Specifically, your client claims he did not receive prompt
medical treatment or the appropriate medications for his
Glaucoma condition, causing permanent loss of vision in the right
eye, as well as pain and suffering.

After careful review of your claim, I have decided not to offer a
settlement.  Investigation reveals your client first complained
of floaters in the right eye on May 8, 2001.  He was seen by the
contract Optometrist and Ophthalmologist on several occasions.
He was administered several types of medications and underwent
Trabeculoplasty surgery.  Just prior to his release to a
Community Corrections Center (CCC), on April 14, 2004, your
client was evaluated by the Ophthalmologist, who noted he had a
visual acuity of 20/30 in the right eye and 20/25 in the left
eye.  The medical record indicates your client received
appropriate medical treatment for his eye problems, consistent
with community standards.  You fail to show that negligence on
the part of any Bureau of Prisons' employee resulted in your
client's alleged injuries.

" *B* "

James P. Duggan, Attorney at Law
RE: James Murray, Reg. No. 56285-079
Claim No. TRT-NER-2005-01187
Page Two

Accordingly, your claim is denied.  If you are dissatisfied with
this decision, you may seek reconsideration from this office or
bring an action against the United States in an appropriate
United States District Court within six (6) months of the date of
this letter.

Sincerely,

Henry J. Sadowski
Regional Counsel

cc: David L. Winn, Warden, FMC Devens

" β-1 "



**U.S. Department of Justice**

Federal Bureau of Prisons

*Northeast Regional Office*

---

*U.S. Custom House - 7th Floor*
*2nd & Chestnut Streets*
*Philadelphia, PA. 19106*

January 26, 2005

James P. Duggan
Attorney at Law
160 State Street
Boston, MA 02109

Re:  Administrative Tort Claim Dated November 14, 2004
     Filed on Behalf of James Murray, Register No. 56285-079
     Claim No. TRT-NER-2005-01187

Dear Mr. Duggan:

This will acknowledge receipt on November 23, 2004, of the administrative tort claim you submitted on behalf of James Murray, for alleged personal injuries and negligence, on or about December 17, 2002 and continuing.

Under the provisions of the Federal Tort Claims Act, 28 U.S.C. 2675, we have six months from the date of receipt to review, consider, and adjudicate the claim.  Accordingly, you may expect to hear from us on or before May 22, 2005.  In order for this office to properly evaluate this claim, you are required to submit all the information required by 28 C.F.R. §14.4(b).

All correspondence regarding this claim should be addressed to me at:  Federal Bureau of Prisons, Northeast Regional Office, Room 801, U.S. Custom House, 2nd & Chestnut Street, Philadelphia, Pennsylvania 19106.  If you have any questions about the status of your claim or if the circumstances surrounding this claim change in any fashion, you should contact me immediately.  Also, should your address change, you should advise me accordingly.

Sincerely,

Henry J. Sadowski
Regional Counsel

cc:  File

**JAMES P. DUGGAN**
ATTORNEY AT LAW
160 STATE STREET
BOSTON, MA 02109

TELEPHONE (617) 523-7222
FACSIMILE (617) 722-0144

April 7, 2005

**FEDERAL EXPRESS**
**8407 9547 5026**

Henry J. Sadowski, Esq.
Regional Counsel
Federal Bureau of Prisons
North East Regional Office
Room 801
US Custom House
2nd & Chestnut Streets
Philadelphia, PA 19106

**Re:  James J. Murray, Register No. 56285-079**

Dear Attorney Sadowski,

Per your letter dated January 26, 2005, I am enclosing
herewith copies of Mr. Murray's medical records as maintained by
FMC-Devens and D'Ambrosio Eye Care, Inc. A review of the same
will indicate as follows:

On May 8, 2001, Mr. Murray presented to the FMC-Devens "sick
call" and reported vision problems, especially with his right
eye.  Mr. Murray was seen at FMC-Devens again on May 22, 2001.
On both occasions, Mr. Murray was seen by a Physician's
Assistant.  On June 18, 2001, Mr. Murray was seen by a Dr.
Guzman.  He was informed that his vision problems would be
corrected with eye glasses.  It should be noted that FMC-Devens
did not have an Optometrist, or Ophthalmologist, on staff at this
time.

On September 24, 2001, four and one half (4 ½) months after
reporting his vision problems, Mr. Murray was finally seen by Dr.
Thomas Maher of the D'Ambrosio Eye Care Center.  On that day, his
intraocular pressure (IOP) measured 43 in his right eye.  This
was considerably elevated past normal bounds (normal intraocular
pressure is 13 - 19).  Mr. Murray was informed that he probably

had Glaucoma and needed to be taken to an eye clinic "to be seen by an Ophthalmologist right away". This was not accomplished until November 13, 2001, a period of nearly two (2) months.

On the 13th, the D'Ambrosio Eye Clinic confirmed Mr. Murray's Glaucoma diagnosis, and indicated that a Trabeculoplasty should be performed on Mr. Murray's right eye immediately. FMC-Devens was unable to respond appropriately to this direction. In fact, Mr. Murray was not presented for surgery until January 15, 2002, a delay of two (2) months. Mr. Murray contends that damage to his right eye could have been avoided, or minimized, had he received proper medical care from May 8, 2001.

Mr. Murray was seen again at the D'Ambrosio Eye Clinic on January 29, 2002. On that date the intraocular pressure in his right eye measured 13. It was determined that Mr. Murray should be seen at FMC-Devens in three (3) months time for an eye pressure check. FMC-Devens failed to conduct such an examination.

On July 15, 2002, Mr. Murray was seen at the D'Ambrosio Eye Clinic. The intraocular pressure in his right eye now measured 38. It was decided that Mr. Murray should begin taking an eye drop called "Lumigan". FMC-Devens failed to dispense this medicine to Mr. Murray until July 26, 2002.

On August 23, 2002, Mr. Murray presented with a slightly increased intraocular pressure in the right eye. He was to be started on yet another eye drop "Alphagan P". On September 23, 2002, Mr. Murray presented again to the D'Ambrosio Eye Clinic. At that time, Mr. Murray informed Dr. Thomas Maher that he had not received the prescribed "Alphagan P". Dr. Maher alerted FMC-Devens that this issue must be immediately resolved. Please see medical note. Because of FMC-Devens' neglect, Mr. Murray did not receive his eye medication until September 24, 2002, one month after its prescription. On this date, Mr. Murray's intraocular pressure had elevated again to 37 in his right eye.

It was now determined that Mr. Murray required surgery. Dr. Francis D'Ambrosio performed a Trabeculectomy on October 15, 2002. This did not produce the desired results. Additional surgery was done on December 17, 2002. Mr. Murray's records indicate that his post-surgical eye medications were again withheld by FMC-Devens. This required Dr. D'Ambrosio to re-instruct FMC-Devens as to the importance of administering these medications in a timely fashion.

On January 7, 2003, Mr. Murray presented for his initial examination with Dr. C. Howard, an Ophthalmologist at FMC-Devens. From my review of the record, it appears that no Ophthalmologist,

or Optometrist, was on staff at FMC-Devens prior to November, 2002.  FMC-Devens opened on October 27, 1998.  In other words, this facility was unable to provide proper eye care for a period of four (4) years!  Dr. Howard informed Mr. Murray, "Unfortunately, we can't do anything about the damage that's already been done to your right eye Mr. Murray... That's permanent.  But, we can try to prevent you from losing any more of your eyesight."

On January 29, 2003, Mr. Murray was seen by Dr. D'Ambrosio. His intraocular pressure was elevated to 31.  It was hoped this would be controlled with eye drops and digital massage.  However, Mr. Murray was not seen again by the D'Ambrosio Eye Clinic until September 11, 2004, a period of nearly eighteen (18) months.  Mr. Murray contends that he was prevented from treating with his primary eye care physician due to FMC-Devens intransigence.

Mr. Murray was released from FMC-Devens on May 24, 2004.  He immediately sought medical attention for his Glaucoma at the Massachusetts Eye and Ear Infirmary.  He is followed there by Janey Wiggs, M.D.  Additionally, Mr. Murray is followed by the D'Ambrosio Eye Clinic on a semi-annual basis.

My client has been informed that the below standard treatment he received while at FMC-Devens contributed to the permanent loss of vision in his right eye which he now endures.

FMC-Devens offers the following Mission Statement:

The health care mission of FMC Devens, is to provide necessary medical, dental and mental health services to inmates by competent, professional staff, consistent with acceptable community standards.

Mr. Murray believes that FMC-Devens failed to meet its Mission Statement in the following ways:

1.    It did not have competent, professional staff trained to detect and diagnose eye care issues.

2.    It did not provide necessary medical services and medications to Mr. Murray in a seasonable fashion.

3.    It did not provide medical services to Mr. Murray in a manner consistent with acceptable community standards.

4.    It punished Mr. Murray by needlessly raising his security level after he voiced his concerns regarding his medical treatment.

As I'm sure you know, Glaucoma consists of a group of diseases which can damage the optic nerve and result in vision loss and blindness.  Early detection and treatment is crucial to protect against this disease.  Glaucoma is easily detected through comprehensive eye examinations, including visual acuity tests, visual field tests, dilated eye examinations, tomometry, and pachymetry.  An annual comprehensive eye examination is indicated, especially for people with a family history of the disease.  Mr. Murray's father, Joseph, suffered from Glaucoma.  Mr. Murray never received any comprehensive eye examinations prior to September 24, 2001.  By that time, he had been in the custody of the Bureau of Prisons for seven (7) years, and had been at FMC-Devens since October, 1998.

There is no cure for Glaucoma.  Vision lost from the disease can not be restored.  However, immediate treatment can delay progression of the disease.  In particular, it is useful to lower eye pressure during the early stages of Glaucoma thus slowing the progression of the disease.  This helps to save vision.

As demonstrated above, my client contends that he has been injured by the acts and omissions of the United States.

Per 28 CFR 15.2(a), I am enclosing an executed Appointment of Counsel.

I would be pleased to discuss this matter with you at your convenience.

Very truly yours,

James P. Duggan

/jpd

cc:  James J. Murray (w/o enclosures)

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**CIVIL ACTION NO.**
**05CA11844-WGY**

James J. Murray,                          )
          Plaintiff                       )
                                          )
v.                                        )
                                          )
United States of America and              )
Harley G. Lappin, as he is                )
Director, Federal Bureau of               )
Prisons, and Michael J.                   )
Sullivan, as he is United                 )
States Attorney for the District          )
of Massachusetts,                         )
          Defendants                      )

**AFFIDAVIT OF JAMES J. MURRAY**

I, James J. Murray, being sworn, hereby depose and say as follows:

1.   I am the Plaintiff in the above- captioned matter.

2.   I make this Affidavit in support of my Opposition to the Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment.

3.   I have read and reviewed the facts set out in my Complaint and Jury Demand and the same are true to the best of my knowledge and belief.

4.   On or about May 8, 2001, I reported to the medical staff at FMC-Devens that I was experiencing vision problems with my right eye. From that date, at least until May 24, 2004, my medical care was regulated and controlled by the Bureau of Prisons, FMC-Devens.

5.   At all material times, I cooperated, to the best of my ability, with any directions or instructions I received from my physicians at the D'Ambrosio Eye Care Center, or from the Bureau of Prisons, FMC-Devens.

6.   At least until January 7, 2003, when I spoke with Dr. Howard at FMC-Devens, I believed that my eye care had been appropriate and that my vision was being saved.

J.J.M

7.    On January 7, 2003, Dr. Howard told me "unfortunately, we can't do anything about the damage that's already been done to your right eye Mr. Murray... that's permanent, but we can try to prevent you from losing any more of your eyesight".

8.    It was at that point I realized that my vision would not be restored and the damage to my eye was permanent.

9.    I did not feel comfortable in presenting a claim alleging medical mal-practice against the Bureau of Prisons while I was incarcerated. I believed that the Bureau, its agents, servants, or employees, might, in any number of ways, retaliate against me.

10.    Upon my release from custody (May 24, 2004), I immediately sought independent medical attention for my glaucoma. I consulted with a lawyer in October, 2004, and, filed a Notice of Claim on November 16, 2004.

11.    I have read the above ten (10) Paragraphs and the same are true to the best of my knowledge and belief.

    Sworn under the pains and penalties of perjury this 13th day of March, 2006.

James J. Murray

## CERTIFICATE OF SERVICE

    I, James P. Duggan, hereby certify that I have this 13th day of March, 2006, served a copy of the foregoing Affidavit of James J. Murray, by first class mail, to Christopher R. Donato, AUSA, U.S. Attorney's Office, One Courthouse Way, Suite 9200, Boston, MA, 02210.

James P. Duggan



**SSOCIATE OPHTHALMOLOGISTS, P.C.**

A. JOSEPH RUDICK, JR., M.D.
GERALD J. SHEPPS, M.D.
DARREN M. WALLIS, O.D.

150 BROADWAY, SUITE 1800
NEW YORK, NEW YORK 10038
Telephone (212) 233-2344
Facsimile (212) 732-9453

305 EAST 40th STREET
NEW YORK, NEW YORK 10016
Telephone (212) 972-5505
Facsimile (212) 972-5599

E-Mail: eyedocnyc@aol.com
Website: www.eyedocnyc.com

James Duggan
160 State Street
Boston, Ma 02109
August 20, 2005

Re: James J. Murray

Dear Mr. Duggan:

For this report I have reviewed the medical records of James Murray. These have
included the medical records of FPC Devens, the medical records of the D'Ambrosio
Eye Care Center, a letter dated April 7, 2005 from Duggan to Sadowski, a letter dated
April 12, 2005 from Sadowski to Duggan, a medical report from Dr. Janey Wiggs,
medical records from the Massachusetts Eye and Ear Infirmary, and a medical report
from Dr. Wendy S. Michaelson.

In summary on May 8, 2001, Mr. Murray presented to FMC-Devens "sick call" and
reported vision problems, especially with his right eye. He complained of photophobia in
the right eye with floaters. His right pupil was noted to be dilated on exam on 5/22/01.
No pressure was taken, and no fundus exam was performed. It is a departure from the
standard of medical care not to fully evaluate a patient who presents with unilateral eye
complaints and a dilated pupil. Mr. Murray was seen again in June 18, 2001 and
informed that his vision problems would be corrected with glasses. It is within a
reasonable degree of medical certainty that the complaints of floaters, vision problems,
photophobia, and dilated pupil in the right eye were not the result of a refractive error, but
represented early manifestations of a more serious eye problem.

The patient was evaluated again on September 24, 2001 by Dr. Thomas Maher of the
D'Ambrosio Eye Care Center. On that day his IOP was noted to be 43 in his right eye.
The anterior segment exam revealed pseudo exfoliation of the lens capsule of the right
eye. He was given the diagnosis of Pseudo exfoliation glaucoma and was started on
timoptic and referred to a glaucoma specialist. This referral was requested for ASAP/in 2
weeks, but was not performed until 11/13/01, nearly two months later. The standard of
care of new diagnosed glaucoma with new treatment is one to two week follow up with re



measurement of pressure on therapy and visual fields. This was not done. It is within a
reasonable degree of medical certainty that the delay in diagnosis of Mr. Murray's
glaucoma, and the delay in treatment contributed to the damage he had suffered form his
glaucoma.

During the November visit a recommendation was made for possible laser
trabeculoplasty . This was not performed until January 15, 2002. No pre procedure IOP
was noted on the chart, nor was the pressure rechecked in the first 24 hours after the
procedure. This is a deviation from the standard of medical care. In a patient with
advanced glaucoma, pressures pre and post laser must be measured and monitored
closely for pressure spikes. Again no visual field was performed to monitor the status of
the patient's glaucoma. This is also a deviation from the standard of care.  The patient
was not seen again until July 15, 2002. By this time his IOP was noted to be 38. It is not
known how long his pressure was severely elevated to this level, but any period of
elevation is his advanced state is likely to cause further optic nerve damage. This is the
reason that the patient was supposed to be seen in three months after the laser procedure.
Lumigan was prescribed, but was not dispensed until July 26th. Such a delay is clearly a
departure from the standard of care. Severely elevated pressure in such a patient must be
treated immediately, since damaged optic nerves are more susceptible to further damage
from even moderately elevated pressures.

The patient was seen again on August 23 with IOP of 21-22 in the right eye. Alphagan P
prescribed, although the medication was not dispensed until September 24th. At this time
his IOP was noted to be 37 in his right eye and it was determined that Mr. Murray
required surgery. The surgery was performed on October 15, 2002. The surgery was
complicated by a tenon's cyst on October 31, 2002 with IOP to 30 OD. Treatment of the
cyst and elevated IOP required additional surgery which was performed on December 17,
2002.

The patient was seen again on January 7th 2003 by Dr. Howard, a newly appointed
ophthalmologist at F.M.C. Devens. He was told that his damage to the optic nerve was
permanent.

On January 29, 2003 his IOP was noted to be 31. He was prescribed drops and digital
massage, but was not seen again until September 11, 2003. There is no way of knowing
what his pressure was during this period of time.

A medical report from Dr. Wiggs confirms severe visual loss in the right eye, with
restriction of his right visual field. Mr. Murray was noted to have difficulty seeing
objects from the right side.

A report from Mass Eye and Ear Infirmary from 5/27/04 notes a 3+ APD in the right eye,
with decreased nasal visual field,  consistent with severe optic nerve damage in the right.
Eye. Pseudoexfoliative material was noted on the right lens. IOP was noted to be 12. A
C/D ratio was .8 OD and .6 OS.

In summary, Mr. Murray had pseduoexfoliation glaucoma that was not diagnosed in a timely fashion. His initial visual complaints were in May 2001 yet he did not have his IOP checked until September 24 2001. While he was given timoptic his IOP. was not evaluated until November 13, 2001, a further delay. When the IOP was measured it was found to be elevated to 34. While surgery was recommended immediately, it was not performed for two months. While the patient had and immediate post laser IOP of 13, a re evaluation was not performed again until July 2002, when IOP of 38 was noted.  It is within a reasonable degree of medical certainty that these continued delays in evaluation and treatment were the cause of Mr. Murray's subsequent optic nerve damage. Such delays are a deviation from the standard of medical care. In addition it is a deviation from the standard of medical care not to monitor a patient with advanced glaucoma with repeated visual fields in addition to IOP examinations. Mr. Murray did not have serial visual fields. These delays within a reasonable degree of medical certainty lead to the damage that Mr. Murray suffered in his optic nerve. This damage is permanent.

Sincerely yours,

A. Joseph Rudick MD



## Mission Statement

*The health care mission of FMC Devens, is to provide necessary medical, dental and mental health services to inmates by competent, professional staff, consistent with acceptable community standards.*

I

# PATIENT RIGHTS AND RESPONSIBILITIES

*While in custody of the Federal Medical Center, Devens, you have the right to receive health care in a manner that recognizes your basic rights, and you also accept the responsibility to respect the basic human rights of your health care providers.*

### RIGHTS

*1. You have the right to health care services, based on the local procedures at this institution. Health Services include medical sick call, dental sick call and all support services. Sick call at this institution is conducted as outlined in the sections below.*

*2. You have the right to be offered a "Living Will," or to provide the Bureau of Prisons with "Advance Directives", or in Massachusetts, a "Health Care Proxy" that would provide the Bureau of Prisons with instructions if you are admitted, as an inpatient, to a hospital in the local community, or the Bureau of Prisons.*

*3. You have the right to participate in health promotion and disease prevention programs, including education regarding infectious disease.*

*4. You have the right to know the name and professional status of your health care providers.*

*5. You have the right to be treated with respect, consideration and dig ty.*

*6. You have the right to be provided with information regarding your diagnosis, treatment and prognosis.*

### RESPONSIBILITIES

*1. You have the responsibility to comply with the health care policies of this institution. You have the responsibility to follow recommended treatment plans that have been established for you by institution health care staff, to include proper use of medications, proper diet, and following all health-related instructions with which you are provided.*

*2. You have the responsibility to provide FMC Devens with accurate information to complete this agreement.*

*3. You have the responsibility to maintain your health and not to endanger yourself, or others, by participating in activities that could result in the spreading or contracting of an infectious disease.*

*4. You have the responsibility to respect these providers as professionals and follow their instructions to maintain and improve your overall health.*

*5. You have the responsibility to treat staff in the same manner.*

*6. You have the responsibility to keep this information confidential.*

II

7. You have the right to be examined in privacy.

7. You have the responsibility to comply with security procedures.

8. You have the right to obtain copies of certain information in your health record.

8. You have the responsibility of being familiar with the current policy to obtain copies of your health records.

9. You have the right to address any concern regarding your health care to any member of the institution staff including your physician, the Health Services Administrator, members of your Unit Team and the Warden.

9. You have the responsibility to address your concerns in the accepted format, such as the Inmate Request to Staff Member form, open houses or the accepted Inmate Grievance Procedures.

10. You have the right to receive prescribed medications and treatments in a timely manner consistent with the recommendations of the prescribing health care provider.

10. You have the responsibility to comply with prescribed treatments and follow prescriptions orders. You also have the responsibility not to provide any other person your medication or other prescribed item.

11. You have the right to be provided healthy and nutritious food. You have the right to be instructed regarding a healthy choice when selecting your food.

11. You have the responsibility to eat healthy and not abuse or waste food or drink.

12. You have the right to request a routine physical examination, as defined by BOP policy. If you are under the age of 50, once every two years; over the age of 50, once a year

12. You have the responsibility to notify medical staff that you wish to have an examination.

13. You have the right to dental care as written in BOP policy, to include preventative services, emergency care and routine care.

13. You have the responsibility to maintain your oral hygiene and health.

14. You have the right to a safe, clean and healthy environment, including smoke-free living areas.

14. You have the responsibility to maintain the cleanliness and safety in consideration of others. You have the responsibility to follow smoking regulations.

15. You have the right to refuse medical treatment in accordance, with BOP policy. Refusal of certain diagnostic test for infectious diseases can result in administrative action against you. You have the right to be counseled regarding the possible ill effects of refusing medical treatment.

15. You have the responsibility to notify Health Services regarding any ill effects that occur as a result of your refusal. You also accept the responsibility to sign the treatment refusal form.

16. You have the responsibility to address your pain issues with your medical provider during your visit. You have the responsibility to follow the pain treatment plan provided to you.

16. You have the right to assessment and management of your pain.

III