UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**CIVIL ACTION NO.
05CA11844-WGY**

| | |
|---|---|
| James J. Murray,<br>    Plaintiff | )<br>)<br>) |
| v. | )<br>) |
| United States of America,<br>    Defendant | )<br>) |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

Now comes the Plaintiff, James J. Murray, who hereby states his Opposition to the Defendant's Motion for Summary Judgment, filed October 12, 2006. In support of his Opposition, the Plaintiff says as follows:

1. Said Motion for Summary Judgment ought to be denied as it is, essentially, the same Motion for Summary Judgment heard and denied by the Court on April 20, 2006. As such, the present Motion for Summary Judgment should be properly styled a Motion for Reconsideration. The United States has not suggested any <u>new</u> facts which can be offered in support of the pending Motion which were not known to it in April, 2006. Thus, a Motion for Reconsideration should would not lie in these circumstances, and a Motion for Summary Judgment should not be lightly re-heard.

2. Further, even if the Court were inclined to hear the Government's pending Motion for Summary Judgment, the same ought to be denied as there are material facts in dispute and, thus, a Motion for Summary Judgment is not proper. For example, the Government suggests that the negligence attributable to its agents, servants, or employees, ended on September 18, 2002. Memorandum, at Page 8. Therefore, argues the Government, the Statute

      of Limitations per FTCA, 28 U.S.C. §2401(b), would have run on September 18, 2004, or, two (2) months before the Plaintiff filed an administrative claim with the Bureau of Prisons.  However, the Plaintiff states that the Defendant's negligence, which commenced on May 8, 2001, continued at least until December, 2002, and most probably through calendar year 2003.  Additionally, the Plaintiff can prove that on August 23, 2004, he provided a proper notice to the United States regarding this case.

3.    The Plaintiff says that evidence developed during discovery shows a pattern of negligent medical treatment which can be imputed to the United States.  At trial, the Plaintiff will prove as follows:

      On May 8, 2001, the Plaintiff reported to sick call at FMC-Devens.  He complained of vision problems in his right eye.  He was seen by Physician's Assistant Alberto Bertances.  Bertances was unable to complete even an elementary eye examination as he did not have proper, operating equipment:

    Q.    And then you made a note that said, "Fundoscopic not able to be done."
    A.    That is correct
    Q.    What did you mean by that?
    A.    Fundoscopic is when you take the ophthalmoscope and you look inside the eye.
    Q.    And that, I take it, is a tool or some kind of instrument?
    A.    Yes.
    Q.    Can you describe it for me, please?
    A.    It's a small hand-held instrument.  It's battery operated.  And it just has – at the end it has different lenses you can look into.  And a light source.
    Q.    Your note says that that was not able to be done.  Why was that not able to be done?
    A.    I believe the one we had there either was discharged – the battery wasn't working that day or something like that.

          ***

    Q.    But you were not able to do that because the tool, or the instrument, was not available to

          2

                you that day?  Is that fair to say?
        A.    Well, the instrument was there.  It was just that the battery wasn't working.
        Q.    The battery wasn't working?
        A.    The light source wasn't working.

Deposition transcript, Alberto Bertances, Pages 10-12, Exhibit "A".

4. At the conclusion of Mr. Bertances' "examination", he concluded that the Plaintiff should be seen by an Optometrist. He expected this would take a few weeks as, despite the fact FMC-Devens styled itself a "Federal Medical Center" it had no Optometrist, or Ophthalmologist, on staff at the time - Deposition Transcript, Alberto Bertances, Pages 15-16, Exhibit "A".

5. On May 22, 2001, two (2) weeks after his examination by Mr. Bertances, the Plaintiff reported again to sick call. On this occasion, he was seen by John K. Brooks, a Physician's Assistant employed at FMC Devens. Brooks conducted a preliminary eye examination and detected the following symptoms:
   a. Floaters/photophobia
   b. Blurred vision
   c. Right pupil dilated
   d. Foreign body sensation

   Brooks recommended that Murray consult with an Optometrist within a week, Deposition Transcript, John K. Brooks, at Page 29, see attached Exhibit "B". In fact, Murray did not see an Optometrist until September 24, 2001, some four (4) months later, see attached Exhibit "C".

6. At his examination on September 24, 2001, Murray was referred to an Ophthalmologist. It was not until November 13, 2001, that Murray was seen by Francis D'Ambrosio, M.D., an Ophthalmologist under contract with the Bureau of Prisons.

7. Murray contends that the delay from May 8, 2001 - November 13, 2001, a period of six (6) months, represents a period wherein he received negligent medical treatment because of acts, or omissions, attributable to the Government.

8.  Even after FMC-Devens finally referred Murray to an Ophthalmologist, its own negligence continued. For example, Dr. D'Ambrosio recommended on November 13, 2001, that Murray have surgery on his right eye immediately, i.e. on November 14, 2001. Devens delayed this surgery until January 15, 2002, when a Trabeculoplasty was performed upon Murray's right eye. Thereafter, Murray was to be followed by Dr. D'Ambrosio at three (3), and six (6) month, intervals, see attached Exhibit "D". In other words, Murray was due to see Dr. D'Ambrosio in April, 2002. FMC-Devens did not permit Murray to see D'Ambrosio until June, 2002.

9.  Other examples of Devens' negligence has been obtained during discovery. On July 15, 2002, Murray was prescribed an eyedrop, Lumigan, by Dr. Thomas Maher, an associate at the D'Ambrosio Eye Care Center. Devens lost the prescription. It was not filled until July 26, 2002, and then was filled only because of the extraordinary efforts of Michael Halloran, a Licensed Practical Nurse employed at Devens.

10. Halloran, at Murray's request, searched for the Lumigan prescription. He performed a computer search. He inquired directly of the pharmacist. He searched in the Medical Records Department for Murray's prescription. Deposition Transcript, Michael Halloran, Page 10-11, see attached Exhibit "E".

11. Unbelievably, Devens repeated this sorry performance not one (1) month later when, on August 23, 2002, Dr. Michael Fu, also an associate at D'Ambrosio Eye Care Center, prescribed a second eyedrop, Alphagan, for Mr. Murray. It took <u>one (1) month</u> for Devens to fill this prescription:

    Q.  Do you have a memory of a conversation that you had with Mr. Murray in which you told him that you had found an old fax dated August 23, 2002, which FMC-Devens had received from the D'Ambrosio Eye Care Center, and that that fax, which contained the prescription for the eyedrops had either been lost or misplaced under some paperwork at Fort Devens?
    A.  Yes. I did find a fax in medical records.
    Q.  When did you find that fax relative to – and I represent to you that the date on the fax was August 23rd, does that refresh your memory as to

4

|   |    |   |
|---|---|---|
|   |    | the date on that fax? |
|   | A. | Not really. |
|   | Q. | Do you recall how long after that fax was sent that you found the same? |
|   | A. | I'm not sure. |
|   | Q. | What's your best memory. |
|   | A. | It may have been a week. |
|   | Q. | Could it have been longer? |
|   | A. | I don't know. |
|   | Q. | Where did you find this fax? |
|   | A. | It would be in a pile "To be filed," that medical records has inside.  They have a pile of camp records "to be filed."  Where medical records would go out and file the paperwork into that individual's files that are kept at the Camp. |
|   | Q. | And this fax was physically where? |
|   | A. | Physically in a pile of records to be filed at the Camp. |
|   | Q. | How big was the pile? |
|   | A. | Maybe 20 pieces of paper. |
|   | Q. | Where was it amongst the 20 pieces of paper? |
|   | A. | I'm not sure. it wasn't right on top.  It might have been – I looked through everything that goes to the Camp to see if there was anything with Mr. Murray's name on it.  And I found that fax. |
|   | Q. | And how did it happen that you came to find that fax?  Were you – |
|   | A. | My Murray asked me – I was trying to help him find a prescription for his eyedrops. |
|   | Q. | And you took it upon yourself to go to medical records? |
|   | A. | Correct.  I'm in the medical records all the time for other issues. |
|   | Q. | So you took it upon yourself to go search for this record? |
|   | A. | Yes. |

   Deposition Transcript, Michael Halloran, Pages 16-18
   and prescription records, see Exhibit "E".

12. On September 23, 2002, Murray reported to Dr. Thomas Maher that he had not received yet another prescription, this one for Alphagan P.  See, Medical Record, see Exhibit "F".

13. Murray underwent eye surgery again on October 15, 2002. FMC-Devens was unable to return Murray to the D'Ambrosio Eye Care Center for a post-operative visit.

5

    This prompted the following note to be made in the D'Ambrosio medical chart:

    PA from Devens called pt. was seen here yesterday and he needed to know if there were any new meds. I told him that pt. had severe Glc and needs to come back today for PO. <u>PA said he knew Devens had messed up with this pt. when they waited 9 mos. for him to be seen and then screwed up getting his meds.</u> (emphasis added) He said that Devens has no policy in place for anything they go with the flow and things tend to get screwed up. He said he would talk to his people and get pt. out to our office today. He will call me back. Told him I had 2:15 opening. See, D'Ambrosio medical chart, dated October 17, 2002, attached hereto and marked Exhibit "G".

14. Additional evidence indicates that negligence which can be imputed to FMC-Devens continued into the year 2003. For example, on February 26, 2003, Dr. Francis D'Ambrosio wrote to FMC-Devens and stated as follows:

    James Murray (reg# 56285-079) underwent eye surgery on October 15, 2002 and again on December 17, 2002. Recently, a post-op visit was cancelled and the appointment was not rescheduled. To ensure the health of Mr. Murray's eyes, it is extremely important that all follow-up appointments be kept. Please call our office to reschedule Mr. Murray's appointment. Thank you.
                              Sincerely,
                              Francis D'Ambrosio, Jr., M.D.

    See attached Exhibit "H".

15. In sum, the Plaintiff contends that the last act of negligence imputed to the Government occurred in calendar year 2003.

16. Moreover, Murray contends that the Statute of Limitations applicable in this case ought to be tolled for the period October 28, 2002 - May 24, 2004.

17. Attached to the Government's Motion for Summary Judgment are a series of so-called "cop-outs" written by Murray to prison officials at FMC-Devens. These are offered for the proposition that Murray knew, or should

        have known, that he was receiving negligent medical care and that this was causing his permanent loss of vision in the right eye. Murray has contended previously, and contends today, that he realized his eyesight was permanently lost when he was so informed by Dr. Charles Howard. This conversation took place in January, 2003.

18. Murray submits that the pertinent conclusion to be drawn from the fact that he provided "cop-outs" to prison staff was that he would be punished if he continued to do so.

19. The Plaintiff attaches hereto the Affidavit of James J. Murray II, see Exhibit "I". Therein, Murray recites that he was "punished" in October, 2002, by a transfer "behind the wall" orchestrated by the Prison Administration at FMC-Devens. The lesson learned by the Plaintiff was that following prison procedures (i.e. filing cop-outs with prison staff) would lead you directly into harm's way.

20. In view of the foregoing, this Court should rule that an "equitable tolling" of the Statute of Limitations occurred in this case from the date Murray was punished by his transfer back behind the wall (October 29, 2002), until his release from custody (March 24, 2004).

21. Notwithstanding the foregoing facts and arguments, Murray submits that he gave adequate and timely notice to the Government regarding his claim, as follows:

   a. On August 23, 2004, Murray wrote to Dr. Charles Howard at FMC-Devens regarding his medical care, see attached Exhibit "J".

   b. On August 23, 2004, Murray wrote to Harley Lappin, Federal Bureau of Prisons, regarding his medical care, see attached Exhibit "K".

   c. On August 23, 2004, Murray filed a so-called Central Office Administrative Remedy Appeal regarding his medical care, see attached Exhibit "L".

   d. On November 16, 2004, Murray filed a so-called Claim for Damage, Injury or Death, with the United States, see attached Exhibit "M".

22. All of the foregoing demonstrates that the United States had timely notice per 28 U.S.C. §2401(b).

WHEREFORE, the Plaintiff, James J. Murray, moves this Court for an Order denying Defendant's Motion for Summary Judgment.

Respectfully submitted,
James J. Murray,
by his attorney,

*/s/ James P. Duggan*
James P. Duggan
BBO# 137500
160 State Street
8th Floor
Boston, MA 02109
617-523-7222

**CERTIFICATE OF SERVICE**

I, James P. Duggan, hereby certify that I have this 9th day of November, 2006, served a copy of the foregoing Opposition to Defendants' Motion for Summary Judgment, by electronic filing and by first class mail, to Christopher R. Donato, Assistant United States Attorney, John Joseph Moakley Courthouse, 1 Courthouse Way, Boston, MA, 02210.

*/s/ James P. Duggan*
James P. Duggan