UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**CIVIL ACTION NO.**
**05CA11844-WGY**

James J. Murray,
Plaintiff

v.

United States of America,
Defendant

**PLAINTIFF'S EXHIBITS IN SUPPORT OF HIS OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Now comes the Plaintiff, James J. Murray, who hereby offers the following Exhibits in support of his opposition to the Defendant's Motion for Summary Judgement, filed October 12, 2006.

**Exhibit "A"**

Deposition Transcript, Alberto Bertances, Pages 10-12 and 15-16.

**Exhibit "B"**

Deposition Transcript, John K. Brooks, Page 29.

**Exhibit "C"**

Medical record, FMC-Devens, dated 9/24/01.

**Exhibit "D"**

Medical record, D'Ambrosio, dated 1/29/02.

**Exhibit "E"**

Deposition Transcript, Michael Halloran, Pages 10-11, 16-18, and D'Ambrosio prescription records.

**Exhibit "F"**

Medical Record, D'Ambrosio Eye Care Center, dated 9/23/02.

**Exhibit "G"**

Medical Chart, D'Ambrosio Eye Care Center, dated October 17, 2002.

**Exhibit "H"**

Letter dated, February 26, 2003, D'Ambrosio Eye Care Center to FMC-Devens.

**Exhibit "I"**

Affidavit of James J. Murray II, dated November 9, 2006.

**Exhibit "J"**

Letter dated, August 23, 2004, Murray to Howard.

**Exhibit "K"**

Letter dated, August 23, 2004, Murray to Lappin.

**Exhibit "L"**

Central Office Administrative Remedy Appeal, dated August 23, 2004.

**Exhibit "M"**

Letter dated, November 16, 2004, Duggan to Lappin.

Respectfully submitted,
James J. Murray,
by his attorney,

James P. Duggan
BBO# 137500
160 State Street
8th Floor
Boston, MA 02109
617-523-7222

**CERTIFICATE OF SERVICE**

I, James P. Duggan, hereby certify that I have this 9th day of November, 2006, served a copy of the foregoing Plaintiff's Exhibits in Support of his Opposition to Defendants' Motion for Summary Judgment, by electronic filing and by first class mail, to Christopher R. Donato, Assistant United States Attorney, John Joseph Moakley Courthouse, 1 Courthouse Way, Boston, MA, 02210.

James P. Duggan

Q. What is a "floater"?

A. It's a sense like you have some kind of particle in your eye.

Q. And you made the further note that he "denied pain, irritation or injury"?

A. That is correct.

Q. And then I think it says, "Circle/eyes." What do you mean by that?

A. Where is that? I'm sorry.

Q. Right here where I have my thumb?

A. "Objective."

Q. "Objective." Does that mean that you conducted an actual examination of his eye?

A. That is correct.

Q. And his eye appeared to you to be normal?

A. Correct.

Q. And then you made a note that said, "Fundoscopic not able to be done."

A. That is correct.

Q. What did you mean by that?

A. Fundoscopic is when you take the ophthalmoscope and you look inside the eye.

Q. And that, I take it, is a tool or some kind of instrument?

"A"

A. Yes.

Q. Can you describe it for me, please?

A. It's a small hand-held instrument. It's battery operated. And it just has -- at the end it has different lenses you can look into. And a light source.

Q. Your note says that that was not able to be done. Why was that not able to be done?

A. I believe the one we had there either was discharged -- the battery wasn't working that day. Or something like that.

Q. Is the proper word for it a "fundoscope"?

A. The procedure, yes.

Q. The tool, or the instrument, is called a --

A. It's called an "ophthalmoscope."

Q. An ophthalmoscope?

A. Yes.

Q. Could you spell that for me, please?

A. O-p-h-t-h-a-l-m-o-s-c-o-p-e.

Q. And that's the actual tool, or the instrument itself?

A. That is correct.

Q. And the examination is called "fundoscopic"?

A. Fundoscope.

Q. And a fundoscope is a done with an ophthalmoscope? Do I have that correct?

A. That is correct.

Q. But you were not able to do that because the tool, or the instrument, was not available to you that day? Is that fair to say?

A. Well, the instrument was there. It was just that the battery wasn't working.

Q. The battery wasn't working?

A. The light source wasn't working.

Q. And that is why the balance of the note says that the "ophthalmoscope doesn't work at this time"?

A. Right.

Q. Then the balance of the note says, "A/floaters?"

A. "Refraction."

Q. Question mark?

A. Yes.

Q. What did you mean by that? "Floaters? Refraction?"

A. "Refraction" means he -- when you have a problem with your eyesight, like you'd be needing

A. Correct.

Q. You asked him a few questions. You concluded that he wasn't in pain. And determined that a further inquiry ought to be made? And that was a referral to an optometrist?

A. Correct.

Q. You did that on May 8th?

A. That is correct.

Q. And you indicated in the box -- I take it that that's your mark there -- that this was routine?

A. Yes.

Q. By "routine", how long would you expect it would take for Mr. Murray to be seen by an optometrist?

A. A few weeks.

Q. A few weeks?

A. Yes.

Q. And is there a reason why Mr. Murray couldn't be seen more quickly than that?

A. At that time, I didn't believe he needed to see anyone.

Q. At that time was there, or not, an optometrist who was on staff here at FMC-Devens?

A. No.

Q. Was there an ophthalmologist who was on staff here at FMC-Devens?

A. No.

Q. Is there one now?

A. Yes.

Q. Is there an ophthalmologist on staff here now?

A. Yes.

Q. Is that still Dr. Howard?

A. Yes.

Q. Prior to Dr. Howard coming on staff here, there was no specialist in eye care matters who worked here at FMC-Devens?

A. That's correct.

Q. And therefore, all such matters had to be referred to outside contractors?

A. That's correct.

Q. At that time was the outside contractor the D'Ambrosio Eye Care Center?

A. We had an optometrist coming in.

Q. You had an optometrist coming in?

A. A contractor. Yes.

Q. Do you know who that was?



A. Well, I felt that there was no -- actually, I don't recall if there was a time frame already put on it. But when I said "Will up to next visit," that the optometrist, who at that time came here on a weekly basis, the consult would be requested for the next visit.

Q. Is that a way of saying that the consult would be done within a week?

A. I thought at that time that for Mr. Murray to be seen in a week was appropriate.

Q. And the fact is that you understood from the record, that a request had been made two weeks previously to refer Mr. Murray to an ophthalmologist?

A. Correct.

Q. Correct?

A. Correct.

Q. So that paperwork had already been put in, and that visit should have been in the works, as you understood it?

A. That is true.

Q. In your judgment, after examining Mr. Murray and reviewing the chart, it was appropriate that he be consulted by, or with,

"B"

40-00-634-4176

AUTHORIZED FOR LOCAL REPRODUCTION

MEDICAL RECORD | CHRONOLOGICAL RECORD OF MEDICAL CARE

| DATE | SYMPTONS, DIAGNOSIS, TREATMENT, TREATING ORGANIZATION (Sign each entry) |
|---|---|
| 6-18-01 | S- I/m complaining about blurred vision |
| 820 | in his Rt eye since the 3rd week |
| | of april. |
| | O. General - Alert, Active oriented x3 |
| | -Eyes Denies any trauma |
| | Ishihara's Test - I/m with good |
| | color, and recognition vision |
| | Rt 20/30 Lt eye 20/25 |
| | No trauma on foreign body identified |
| | good light pupil accommodation and reaction |
| | A- miopia |
| | P- F/u with optometrist consultation |
| | [signature] A. GUZMAN CAMP PHYSICIAN FMC DEVENS |
| 9/24/01 | S — Seen by optometrist today. Needs to start eye gtts. |
| 1645 | O — V.S. not indicated. O.D IOP - 43 |
| | A — O.D. Glaucoma |
| | P — Rx Start Timoptic ophth soln 0.5% i gtt. bid in OD |
| | x 90 days. |
| | Consult to ophth. clinic written for appt. ASAP [illegible] |
| | [signature] S. Howard, MD Clinical Director FMC Devens |
| | [signature] K. Bernhard, M.A |

| HOSPITAL OR MEDICAL FACILITY | STATUS | DEPART./SERVICE | RECORDS MAINTAINED AT |
|---|---|---|---|
| FMC Devens | | | |

| SPONSOR'S NAME | SSN/ID NO. | RELATIONSHIP TO SPONSOR |
|---|---|---|
| | | |

PATIENT'S IDENTIFICATION: *(For typed or written entries, give: Name - last, first, middle; ID No or SSN; Sex; Date of Birth; Rank/Grade.)*

Murray James
56285-079
Camp

REGISTER NO. | WARD NO.

**CHRONOLOGICAL RECORD OF MEDICAL CARE**
Medical Record

STANDARD FORM 600 (REV. 6-97)
Prescribed by GSA/ICMR
FIRMR (41 CFR) 201-9.202-1

"C"

Patient Name James Murray Age 45yo ♂ # 10687 Date JAN 29 2002

HPI: Location, timing, quality, context, severity, duration, modifying factors, ass. S&S. Referred by ______ Time 11:30 arrived 10:05

CC: s/p LTP OD 1/15/02
had no difficulty p̄ LTP.

LEE ______ Dr. Yin @ 10:20

-CL

Review of ROS & PFSH Changes Y (N)

Gen. Med Obs: (+) oriented x 3 (+) relatively healthy

Tim .5 / . OD ÷ OS BID.

V SC CC SC CC — 20/70-H, 25 ±3. J J

P -APD ERRLA ☑

EOM FULL ☑ CVF FULL OU ☐ CT ORTHO ☐ STEREO

Am OD OS

W OD OS AGE OF Rx ADD

MR OD OS ADD 20/ 20/ J

ANTERIOR SEGMENT

T 13 13 (A) TP

TEAR FILM WNL ☐ TBUT OD ___ SEC OS ___ SEC

Lids/Lashes/Adnexa WNL OU ☑

Conjunctiva BULBAR W & Q OU ☐ PALPEBRAL W & Q OU ☑ injected

Cornea CLEAR OU ☑ GUTTATA OU ☐ OTHER ☐

OTHER UFR NSR.

Anterior Chamber D & Q OU ☑

LENS CLEAR OU ☐ (+) PXF OU > OS. 1+-2 NS 1+NS

Iris WNL OU ☐ (+) PXF OD > OS

___ Dil c̄ 1% T 2.5% PE 1% C ___ Undilated

FUNDUS D/M/V/P - WNL OU ☐ stable

COPY

.85 .75 C/D

☐ Interested lasik ☐ Not interested lasik

ASSESSMENT:
1. POAG OD > OS. good reduction in IOP's S.W.I.N.
2. cataracts OU S.W.I.N.
3. S.W.I.N.
4. S.W.I.N.
5. M / H / A / P S.W.I.N.

PLAN:
1. BFA today. CCM.
2. 3wk TC @ Dr. ___ ; 6 wk ___ c̄ TC
3.
4.

DiAmbrosio Eye Care
479 Old ___ Turnpike
Lancaster, MA 01523

NEXT APPT. → 6 wk ___ TC CODE 99212

SIGNATURE ______ "D"

024/PEN/4-01

Q. When you did the computer search, what did you find?

A. Nothing. Not the first time, no.

Q. By the way, where did this conversation take place?

A. This would be in the medical room at the Camp.

Q. Was anybody else present for this conversation?

A. Probably -- maybe other inmates. I would be the only BOP staff probably in that room at that time.

Q. As far as you were concerned, it was a conversation just between yourself and Mr. Murray?

A. Correct.

Q. If anybody else was in the room --

A. Right. They may have been at the doorway or whatever. But it was a private conversation.

Q. Between the two of you?

A. Yes.

Q. You did the computer search and found that there was no record in the computer?

A. I would say the first time he came to me, yes.

"E"

Q. Do you recall when that first time was?

A. I can't recall the date, no.

Q. The fact that you used the words, "the first time" suggests to me that there was a second time?

A. Yes.

Q. Was there a second time Mr. Murray came to you?

A. Yes.

Q. Or a second time that you did a computer search?

A. There was a second time Mr. Murray came to me.

Q. When was that?

A. That was the following night.

Q. What happened during this conversation?

A. I told him that there was -- that would be the following night after I had pulled up on the computer -- I said that there was nothing in the pharmacy.

Q. Okay.

A. There was no prescription ordered.

Q. What did Mr. Murray tell you the second time that you and he talked about the matter?

A. Correct.

Q. And it's your best memory as you sit here today that a week passed?

A. I would say close to a week. I can't tell you exactly.

Q. Was this the first and the only time that you had any conversations with Mr. Murray about his obtaining prescription medications in a timely fashion?

A. No.

Q. Were there other occasions when you had conversations about this subject with Mr. Murray?

A. Well, each time he had a prescription filled, I would be the one who would bring it out to him.

Q. Right.

A. So at least on -- at least on a monthly basis. They usually give a month's supply at a time.

Q. Were there other occasions during which Mr. Murray's told you, "I'm not getting my prescription medications"?

A. I'm not sure to be honest with you.

Q. Do you have a memory of a conversation that

you had with Mr. Murray in which you told him that you had found an old fax dated August 23, 2002, which FMC-Devens had received from the D'Ambrosio Eye Care Center, and that that fax, which contained the prescription for they eyedrops had either been lost or misplaced under some paperwork at Fort Devens?

A. Yes. I did find a fax in medical records.

Q. When did you find that fax relative to -- and I represent to you that the date on the fax was August 23rd, does that refresh your memory as to the date on that fax?

A. Not really.

Q. Do you recall how long after that fax was sent that you found the same?

A. I'm not sure.

Q. What's your best memory?

A. It may have been a week.

Q. Could it have been longer?

A. I don't know.

Q. Where did you find this fax?

A. It would be in a pile "To be filed," that medical records has inside. They have a pile of camp records "to be filed. " Where medical records

would go out and file the paperwork into that individual's files that are kept at the Camp.

Q. And this fax was physically where?

A. Physically in a pile of records to be filed at the Camp.

Q. How big was the pile?

A. Maybe 20 pieces of paper.

Q. Where was it amongst the 20 pieces of paper?

A. I'm not sure. It wasn't right on top. It might have been -- I looked through everything that goes to the Camp to see if there was anything with Mr. Murray's name on it. And I found that fax.

Q. And how did it happen that you came to find that fax? Were you --

A. Mr. Murray asked me -- I was trying to help him find a prescription for his eyedrops.

Q. And you took it upon yourself to go to medical records?

A. Correct. I'm in medical records all the time for other issues.

Q. So you took it upon yourself to go search for this record?

A. Yes.



Date 7/15/02

Patient Name James Murray Age 46 ♂ # 66487 Time 11:15 early 9:15AM

Referred by

LEE 1/02

CC: pt very concerned about glaucoma & health of eyes & wants condition closely monitored. pt feels vision a little more "blurry" OD - pt has not had TC since last visit here 1/02 - pt does not properly occlude puncta

Review of ROS & PFSH Changes Y (N)

Gen. Med Obs: oriented x 3, relatively healthy Lum 0.5 BID OU ALL

V SC CC SC CC 20/40⁻² 20⁻³ J J

P +APD OD ERRLA

EOM FULL

CVF FULL OS; constricted 360° OD

STEREO

GT ORTHO

pt had to constantly move head & eye to see chart

Am OD OS 20/ 20/ J

W OD OS

MR OD OS

AGE OF Rx ADD ADD

T (A) P 36 / 14 red tube

TEAR FILM WNL

TBUT OD ___ SEC OS ___ SEC

OTHER

NSR

VFR

ANTERIOR SEGMENT

Lids/Lashes/Adnexa WNL OU

Conjunctiva

BULBAR W & Q OU

PALPEBRAL W & Q OU

Cornea

CLEAR OU

GUTTAE OU

OTHER slight pigment on endo

Anterior Chamber D & Q OU

Iris WNL OU

LENS CLEAR OU +PXF

1+ NSC 1+ NSC

DI 1% T 2.5% PE 1% C ___ Undilated

FUNDUS

DM/MP WNL OU

thin inferior & superior rim

ASSESSMENT C/D .90

1. PXF glaucoma OU - endstage OD & ↑IOP ↑ today S.W.I.N

2. Early NSC OU S.W.I.N

3. S.W.I.N

4. M/H/A/P S.W.I.N

D'Ambrosio Eye Care
479 Old Union Turnpike
Lancaster, MA 01523

sample of Lumigan given

PLAN

1. Pt ed re: findings / explained need to properly occlude puncta ≥ 2 min. & instilling gtts / CCM

start Lumigan OD / consider further LTP OD / monitor closely

2. Monitor

4.

☐ Interested lasik

☐ Not interested lasik

NEXT APPT. 2 week TC CODE 99214

SIGNATURE

024/ALL/4-02

8/30/2002 11:22 FAX 5088585400 UMASS-FMCDevens Devens 003/003
08/30/2002 11:08 D'AMBR O EYE CARE → 15082525400 NO.119 P03

56285-079 Camp.

D'AMBROSIO Eye Care!

FRANCIS A. D'AMBROSIO, JR., M.D.

100 Powder Mill Road
Acton, MA 01720-5912
(978) 897-7212

100 Hospital Road
Professional Bldg., Suite 29
Leominster, MA 01453-2246
(978) 537-3300

74 Main Street
Gardner, MA 01440-2607
(978) 632-8800

PATIENT'S NAME: James Murray DATE: 8/27/02

℞ X Alphagan P 0.15%
___ Betagan C Cap ___ .25% ___ .50%
___ Betoptic S .25%
___ Cosopt
___ Lumigan 0.03%
___ Pilagen C Cap ___ 1% ___ 2% ___ 4%
___ Trusopt 2%
___ TXE 0.5%
___ Xalatan .005%
___ Other ___

(Gne Drop)

X OD ___ QD X BID
___ OS ___ QAM ___ TID
___ OU ___ QHS ___ QID

Disp.: X 5ml
___ 10ml
___ 15ml

REFILL 6 TIMES

___ M.D.
SIGNATURE

Interchange is mandated unless the practitioner writes the words "No Substitution" in this space.



# FAX TRANSMITTAL

DATE: 10/22/02

TO: Devens Pham.
CO.:
PHONE #:
FAX#: 978-796-1399

FROM: Jen

LEOMINSTER
- [X] TEL: 978-537-3900
- [X] FAX: 978-537-6030
- [ ] Billing: 978-537-9909

ACTON
- [ ] TEL: 978-897-7212
- [ ] FAX: 978-461-0345
- [ ] FAX: 978-897-9856

GARDNER
- [ ] TEL: 978-632-3930
- [ ] FAX: 978-632-3158
- [ ] FAX: 978-630-2618

OTHER
- [ ]

THIS IS PAGE 1 OF 3

SUBJECT: James Murry

① The Rx for Lumigan was faxed and mailed to medical records on 7/25/02.

② The Rx for Alphagan was faxed and mailed to medical record's on 8/27/02.



10/22/2002 16:03 FAX 5088565400 UMASS-FMCDevens 56285-079 Devens 007
10/22/2002 15:49 D'AMBROSI EYE CARE → 15088565400

Date SEP 23 2002

Patient Name James W Murray Age 46 ♂ # 64487 Time 11 am early 10:40

CC: pt c endstage glaucoma & significantly restricted field OD — here for IC/pt very concerned about IOP & health of eyes & wants condition closely monitored / pt hasn't received Rx for Alphagan yet Xalatan QHS OD / Alphagan BID OD

Referred by

LEE

Review of ROS & PFSH Changes Y / (N)

Gen. Med Obs: + oriented x 3 + relatively healthy

V sc 20/60 -2/+1 CC SC CC J J

P ↓APD + OD

EOM FULL ☑

CVF FULL OU ☐

CT ORTHO ☐

STEREO

Am OD OS 20/ 20/ J

W 25 OD OS AGE OF Rx ADD

MR OD OS ADD

T 37/37 < 13 per tonometry

TEAR FILM WNL ☐ TBUT OD ___ SEC OS ___ SEC

OTHER UFR NSR BFR

ANTERIOR SEGMENT

Lids/Lashes/Adnexa WNL OU ☑

Conjunctiva BULBAR W & Q OU ☐ pinguecula OU PALPEBRAL W & Q OU ☑

Cornea CLEAR OU ☐ GUTTATA OU ☐ OTHER ☑ + pigment on endo

Anterior Chamber D & Q OU ☑

Iris WNL OU ☑

LENS CLEAR OU ☑

__ Dil 8 1% T 2.5% PE 1% C ✓ Undilated 78D

FUNDUS

DISM/P - WNL OU ☐

clear

thin superior & inferior rim

flat

likely shunt vessels

clear

ASSESSMENT

C/D .90 .45 .45

1. POAG glaucoma OD > OS (endstage OD) c poor controlic gtts / s/p LTP OD — S.W.I.N
2. IOP always to good level c starting gtts but then ↑ within short while — S.W.I.N
3. S.W.I.N
4. M/H/A/P S.W.I.N

PLAN

1. CCM & start Alphagan BID OD / wait 5-10 min between gtts and occlude punctum x 2 min after gtts /
2. discuss further LTP vs filtering surgery c Doc Jr
4.

☐ Interested lasik ☐ Not Interested lasik

9/25/02 — Discussed case c Doc Jr. Pt to CCM but needs filtering surgery (trabeculectomy) $ [illegible]

NEXT APPT. LTP vs. filtering [illegible] 99213

SIGNATURE [signature]

10/22/2002 16:03 FAX 5088565400 UMASS-FMCDevens 56285-079 Devens 007
10/22/2002 15:49 D'AMBROS' EYE CARE → 15088565400

Date SEP 23 2002

Patient Name James Murray Age 46 # 64487 Time 11am early 10:40

CC: pt c endstage glaucoma c significantly restricted field OD – here for tc/pt very concerned about IOP & health of eyes & wants condition closely monitored / pt hasn't received Rx for Alphagan yet

Referred by

LEE

Xalatan QHS OD / Alphagan P 0.5% BID OD

Review of ROS & PFSH Changes Y / N

Gen. Med Obs: oriented x 3 relatively healthy

V SC 20/60-2/+1 CC SC CC J J

P APD ERRLA

EOM FULL

CVF FULL OU

ET ORTHO

STEREO

Am OD OS

W 25 OD OS

MR OD OS

20/ 20/ J

AGE OF Rx ADD ADD

T 37, 37 <13 per tonopen

TEAR FILM WNL TBUT OD ___ SEC OS ___ SEC

ANTERIOR SEGMENT

Lids/Lashes/Adnexa WNL OU

Conjunctiva BULBAR W & Q OU pingueculas OU PALPEBRAL W & Q OU

Cornea CLEAR OU GUTTATA OU OTHER + pigment on endo

Anterior Chamber D & Q OU

Iris WNL OU

OTHER VFR NSR BFR

LENS CLEAR OU

__ Dil'd 1% T 2.5% PE 1% C Undilated 78D

FUNDUS

DM/VP - WNL OU

clear clear

thin superior & inferior rim

flat

likely shunt vessels

ASSESSMENT C/D .90 .45

1. PXF glaucoma OD > OS (endstage OD) c poor control c gtts / s/p LTP OD S.W.I.N

2. IOP always to good level c starting gtts but then ↑ within short while S.W.I.N

3. S.W.I.N

4. M/I/H/A/P S.W.I.N

PLAN

1. CCM & start Alphagan BID OD / wait 5-10 min between gtts and occlude punctum x 2 min c gtts /

2. discuss further LTP vs filtering

3. surgery c Doc Jr

4.

NEXT APPT. LTP vs filtering surgery 99213

☐ Interested lasik ☐ Not interested lasik

9/25/02 – Discussed case c Doc Jr. Pt to ccm but needs filtering surgery (trabeculectomy) stat

SIGNATURE

02AMLLAL-02

D'Ambrosio Eye Care
479 Old Union Turnpike
Lancaster, MA 01523

**COPY**

PATIENT NAME: James Murray # 4487

| DATE | |
|---|---|
| 2-1-02 1110 PDK | Gave Heidi pts test results WNL BA. Jen will set up next appt. |
| 7/25/02 | Told Heidi Lumigan Rx she will call Devens pharm. BA Faxed over signed Rx. BA |
| ~~8/21/02~~ | ~~I called Lumigan Rx into Devens pharm. The also require a hard copy faxed. I will leave chart for Dr Fil. BA~~ ERROR BA |
| 8/23/02 | Called Heidi Re Alphagan Rx. Lmom BA |
| 8/26/02 | Heidi Called back told her Rx for Alphagan to be called into Devens Pharm. Chart back to Dr Fil for hard copy. BA Mailed out consult form. BA |
| 8/27/02 | Faxed & mailed Rx to FMC Devens BA |
| 10.15.02 950 | po call - Heidi is on vacation. Lmom for Sheryl Cutter per - gave her po appt & told her to call c̄ any questions. KJ |
| 10/17/02 800 | Lmom Cheryl to call me back. Pt needs to be seen today. BA |
| 10:40 | PA from devens called pt was seen here yesterday and he needed to know if there were any new meds. I told him that pt had severe G/c. and need to come back today for PO. PA said he knew Devens had messed up c̄ this pt when they waited 9 mos for him to be seen and then screwed up getting his meds. He said that Devens has no policys in place for anything they go c̄ the flow and things tend to get screwed up. He said |
| " G" | he would talk to his people and get pt |

D'Ambrosio Eye Care
479 Old Union Turnpike
Lancaster, MA 01523

**COPY**

PATIENT NAME James Murray # [illegible]

| DATE | |
|---|---|
| 10/17/02 con | out to our office today. He will call me back. Told him I need 2:15 opening. [initials] |
| 10/22/02 | Per Heidi Devens has not been receiving Pt's Rx. She asked that I fax over to the Clinic at 978-796-1399. ~~Faxed~~ Faxed note & Rx. I had already faxed and mailed the originals to Prison. [initials] |
| 10/22/02 | Faxed to Heidi all visits starting from 9/23/02 – 10/21/02 [initials] |
| 10/28/02 | Jeff PA at Devens called to verify what Drops pt should be on. Per DR Fil pt should be on Acular / Atropine / PF QID OD. [initials] |
| 11/1/02 | Called Judy @ 978-796-1000. Wrong extension given & no answer @ front desk. [initials] |
| 12.17.02 | Called Heidi - LMOM - if she has any questions call me. [initials] |
| 12/26/02 | Pt NS today for PO w/ DR Maher @ 8:50am. Heidi from Devens called @ 9:40am to say pt didn't make it because of the weather. Left chart for [illegible] to FU w/ Heidi and RS. KM |
| 12-26-02 12:27PM | Called Heidi c RS appt to 12-27-02 [initials] |
| 12/26/02 | Spoke c Medical Director @ FMC Devens. Explained pt's condition stable on 12/23/02 & OK for pt to wait until 12/30/02 to be seen. [initials] |
| 1/29/03 | Spoke c Dr. Burkhard, James' PCP @ Devens, and told him that we would like to change PF qid OD to Acular qid OD. I told him that we saw James today but he left before I could discuss case with Dr. Jr. He says he will make sure his drops are changed. |



Francis A. D'Ambrosio, Jr., M.D.
Eye Physician & Surgeon

#00487

February 26, 2003

To Whom It May Concern:

James Murray (reg # 56285-079) underwent eye surgery on October 15, 2002 and again on December 17, 2002. Recently, a post-op visit was cancelled and the appointment was not rescheduled. To ensure the health of Mr. Murray's eyes, it is extremely important that all follow-up appointments be kept. Please call our office to reschedule Mr. Murray's appointment. Thank you.

Sincerely,

Francis D'Ambrosio, Jr., M.D.

D'Ambrosio Eye Care
479 Old Union Turnpike
Lancaster, MA 01523

74 Main Street
Gardner, MA 01440-2607
TEL: 978 • 632 • 3930
FAX: 978 • 632 • 3158

Professional Building, Suite 2B
100 Hospital Road
Leominster, MA 01453-2245
TEL: 978 • 537 • 3900
FAX: 978 • 537 • 6030

100 Powder Mill Road
Acton, MA 01720-5912
TEL: 978 • 897 • 7212
FAX: 978 • 461 • 0345

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**CIVIL ACTION NO.**
**05CA11844-WGY**

James J. Murray,
Plaintiff

v.

United States of America,
Defendant

**AFFIDAVIT OF JAMES J. MURRAY II**

I, James J. Murray, being sworn, hereby depose and say as follows:

1. I am the Plaintiff in the above-captioned matter.

2. I make this Affidavit in support of my Opposition to the Defendant's Motion for Summary Judgment.

3. On or about April 25, 1994, I was sentenced by the United States District Court to a term of imprisonment for twelve (12) years and six (6) months for conspiracy to possess and distribute marijuana.

4. I commenced my sentence at the Hillsborough County Jail in Manchester, New Hampshire. I was then transferred to LSCI-Allenwood, Pennsylvania. I remained at Allenwood from May 18, 1994 through October 28, 1998.

5. On October 28, 1998, I was transferred to FPC-Devens, that is, to the satellite camp near FMC-Devens. I was selected to be part of a volunteer work cadre to assist in the opening and activation of FMC-Devens. I was selected for this work cadre because of my good disciplinary record and my job skills. I had been a trained house painter prior to my incarceration and the Bureau of Prisons had need for this kind of job skill as they opened a new medical center.

6. From October 28, 1998, until October 29, 2002, I was housed at FPC-Devens. This camp is a satellite camp at Devens, prisoners are housed in a dormitory-style environment, and all prisoners are minimum security inmates. FPC-Devens is among the lowest classification

"I"

facilities maintained by the Bureau of Prisons.

7. During my stay at the FPC-Devens, I had no disciplinary reports except for, on one occasion, in March, 2000, I was reprimanded for distributing several containers of yogurt to a work detail without explicit authorization to do so.

8. On October 29, 2002, four (4) years after my arrival at FPC-Devens, I was transferred to the higher security prison at FMC-Devens. I remained there for six (6) months, that is, until April 18, 2003. FMC-Devens is a prison in the classic sense of that word. It has locked cells, controlled movement of inmates, and an array of higher security measures not found at a federal prison camp. Inmates at FMC-Devens were, and are, of a higher security classification than at FPC-Devens.

9. I had done nothing to warrant a transfer "behind the wall". I was told that the official reason for my transfer was a so-called "management variable". That is, I was supposedly to receive easier, better, access to medical treatment at this new location.

10. On information and belief, I state that the given reason for my transfer was a pretext. For example, in order to reach medical resources at the Devens prison from the Devens camp, is necessary for an inmate to walk perhaps a 1/4 of a mile. I had made this walk on many occasions, as did many other inmates, without incident. Also, I did not receive any "better" access to medical care while housed at the prison, as my primary eye-care physician was still located at the D'Ambrosio Eye Care Center in Leominster, MA. In fact, it was more difficult for the prison administration to transfer me for eye care appointments from the prison than it was from the camp.

11. Additionally, because of this "management variable transfer" I was punished in other ways. For example, I lost my eligibility for furloughs due to this transfer. I had been expecting my first furlough on November 22, 2002, however, this was denied me under prison regulations. I was ordered to hard labor while at the federal medical center. Specifically, I was ordered to do kitchen work commencing at 4:00 a.m. each day. Also, I believe I was deliberately put in harm's way during my transfer from the prison camp to the medical camp because I was physically vulnerable and housed with much more violent inmates. Specifically, I shared a locked cell at the FMC with a convicted murderer

doing a life sentence. It is well known that inmates at the Medical Center have an animosity directed at the inmates housed at the Prison Camp as "campers" are thought to be cooperative with the prison administration. I was transferred back to the federal prison camp after six (6) months. This is the longest transfer period permissible under the management variable regulation.

12. I remain convinced that my transfer from the Federal Prison Camp at Devens to the Federal Medical Center at Devens, was motivated by a desire to silence me from making any further complaints about my eye, and its medical treatment.

13. Until my release from FPC-Devens on May 24, 2004, I took great care not to complain of my medical treatment to prison authorities.

14. I have read the foregoing 13 paragraphs and the same are true to the best of my knowledge and belief.

Sworn under the pains and penalties of perjury this 9th day of November, 2006.

James J. Murray

**CERTIFICATE OF SERVICE**

I, James P. Duggan, hereby certify that I have this 9th day of March, 2006, served a copy of the foregoing Affidavit of James J. Murray II, by first class mail, to Christopher R. Donato, AUSA, U.S. Attorney's Office, One Courthouse Way, Suite 9200, Boston, MA, 02210.

James P. Duggan

James J. Murray
Reg # 56285-079
c/o Coolidge House C.S.C.
307 Huntington Avenue
Boston, MA 02115

Dr. C. Howard
c/o F.M.C. Devens
P.O. Box 880
Ayer, MA 01432

Monday, August 23rd, 2004

Dear Dr. Howard,

How are you Dr. Howard? Very well I hope! I wanted to send this letter to you today, in order to say Thank You. And, In order to apprise you of the current state of my eyes and my eye care…As well as a promise that I had made to you, which I have kept Dr. Howard!

First Dr. Howard, I would like to send my thanks out to you (as well as the F.M.C. Devens Medical Records Department) for complying with my recent request in sending me a copy of your (2 page) Ophthalmic Clinic notes regarding my final eye examination conducted by you on 4/14/04. I now have a complete set of my Federal Bureau of Prisons Medical Records in order to be of assistance to me in any future eye care which I may need. So, thanks again Dr. Howard.

On another note Dr. Howard, since my release on 5/24/04 I have now currently undergone several separate, and in depth eye examinations/evaluations at 3 separate Eye Care Facilities (On 5/27/04, 6/7/04, 6/22/04, and 8/11/04 respectively). And, I have now been placed on a schedule to be seen every 3 months in the Glaucoma Clinic of the World Renowned: Massachusetts Eye and Ear Infirmary in Boston, MA.

Upon one of these aforementioned Eye Examinations/Evaluations at the Mass Eye and Ear Infirmary Dr. Howard, it was remarked to me by one of the examining Ophthalmologists/Glaucoma Consultants that; "It was too bad that it took F.M.C. Devens so long to get me the help that I needed for my right eye, because now, (The Dr. Stated) you're basically only seeing out of your left eye Mr. Murray". "And, (the Dr. continued) If anything should ever happen to your left eye"??? (The Dr. did not need to finish this sentence). So, for this reason Dr. Howard, I have now been prescribed eyeglasses with Polycarbonate frames and lenses for the protection of my left eye.

During this particular eye examination, I myself then went on to inform the examining Ophthalmologist/Glaucoma Consultant (at The Mass Eye and Ear Infirmary)

"J"

That: My heart was absolutely broken over the amount of permanent damage and vision loss which I had incurred within my right eye, because of the fact that F.M.C. Devens did not have a Full Time Eye Care Professional on its staff to help me, from the time it had opened on 10/27/98 (Camp) and 1/26/99 (Main Prison)... Until your arrival in November, of 2002 Dr. Howard! (I had originally reported my vision problems within my right eye on May 8th, 2001, to The F.M.C. Devens Physicians Assistants at the F.M.C. Devens Camp Sick Call Period). (Appx. 18 months prior to your being appointed as the F.M.C. Devens/F.M.C. Devens Camps' Full Time Staff Eye Care Professional).

I then went on to inform this very same (above mentioned) Ophthalmologist/Glaucoma Consultant that; "The New Full Time F.M.C. Devens Staff Eye Care Professional whom I have spoken of is an Ophthalmologist by the name of Dr. C. Howard." "And, (I continued) He is Very Good"!

I also went on to mention: "How Happy I was for all of the Inmates at F.M.C. Devens and F.M.C. Devens Camp (Both Present & Future) to have such an Eye Care Professional as competent and professional (such as yourself Dr. Howard) now on its staff, in order to provide quality eye care...In a timely manner to the Inmates". "And, that hopefully, what had happened to myself, and the permanent damage and vision loss which I have incurred......will never happen again to another Inmate at F.M.C. Devens or F.M.C. Devens Camp".

This, will now bring me to the final topic of my letter to you today Dr. Howard. As you may recall during previous conversations between yourself and I Dr. Howard, I had made 3 promises to you. And, Being a Man of My Word, I always keep my promises!

In any event Dr. Howard, my promise #1 to you was: that I would personally speak with The F.M.C. Devens Warden (David L. Winn) in your behalf, in the hopes of my conversation being of some helpfulness to you, in your quest of obtaining various types of Ophthalmologic/Eye Examination Equipments which you had desired for the F.M.C. Devens Clinic. (Within the F.M.C. Devens Hospital). In order to assist you, in providing an even better quality of Eye Care!

As you may also recall Dr. Howard, I had informed you that I did indeed attempt to engage The F.M.C. Devens Warden (David L.Winn) in conversation pertaining to my eye condition, its treatment, and the subject of your equipment desires at F.M.C. Devens. And, that however Dr. Howard, my attempt at conversing with The F.M.C. Devens Warden (David L. Winn) only proved to be an exercise in futility!

This thus, will now bring me to my 2nd, and 3rd promises to you respectively Dr. Howard. At the time of my sending this letter to you today Dr. Howard (on 8/23/04), I have also fulfilled my 2nd & 3rd promises to you of: my sending not only a letter in your behalf to the Federal Bureau of Prisons Northeast Regional Office in Philadelphia, PA. But, of: my sending a letter to The Federal Bureau of Prisons Central Office itself, in Washington, D.C. in your behalf!

It is my sincere hope & desire that my letters in your behalf will be of help in your quest of obtaining the various types of Ophthalmologic/Eye Examination Equipments which you had desired for The F.M.C. Devens Clinic.

Unfortunately for me Dr. Howard, the Federal Medical Center (F.M.C.) Devens did not have a full-time Eye Care Professional on its staff until your arrival in November of 2002. And so, I & my eyesight became a victim of the F.M.C. Devens & The F.M.C. Devens' Health Services Department as well as its Physicians Assistants' incapabilities of properly diagnosing my Glaucoma Eye Disease on repeated occasions, and, in a timely manner. And, of the failures of the F.M.C. Devens, The F.M.C. Devens Health Services Department, and The F.M.C. Devens Pharmacy to dispense my (Dr. prescribed) eye medications to me on repeated occasions, and, in a timely manner.

Because of my fears of reprisal, retribution, and/or punishment by the Devens Federal Medical Center (such as the delayed or failed dispensing of my much needed prescription eye pressure lowering medications). As well as my being punished by the F.M.C. Devens' Associate Warden (Hospital) Edward B. Motley's Unnecessary and Needless raising of my security level (from 10/29/02-4/18/03), it hasn't been until now (just after my release on 5/24/04) that I have felt safe and comfortable enough to end my silence and write to both The Federal Bureau of Prisons Northeast Regional Office in Philadelphia, PA., & The Federal Bureau of Prisons Central Office itself in Washington, D.C. In your behalf Dr. Howard. And so, I do whole-heartedly apologize to you for my delay.

Unfortunately for me Dr. Howard, as you are aware, the permanent damage & vision loss which I have incurred is now irreversible. However, it is my sincere hope & desire that my letters in your behalf will result in what has happened to me and my eyesight, never happening again to another Inmate at the F.M.C. Devens or The F.M.C. Devens Camp...Perhaps this will be my legacy?

With Sincere Hopes
And My Best Wishes

James J. Murray

James J. Murray
Reg# 56285-079

James J. Murray
Reg. # 56285-079
c/o Coolidge House C.S.C.
Room # 503
307 Huntington Avenue
Boston, MA 02115

Mr. Harley Lappin
Federal Bureau of Prisons
Central Office
320 First Street, N.W.
Washington, D.C. 20534

Monday, August 23rd, 2004

I am writing this letter today, in behalf of: Dr. C. Howard (Ophthalmologist) at the Federal Medical Center Devens, in Ayer, Massachusetts.

In addition, I am writing this letter today, in behalf of: All Inmates at F.M.C. Devens, & F.M.C. Devens Camp (Both Present & Future). As well as, in behalf of: All Federal Inmates throughout the entire Federal Bureau of Prison System (Both Present & Future).

I am also writing this letter today, in the sincere hopes that the terrible tragedy which has occurred to my eyesight, will hopefully never happen to another Federal Inmate. An encapsulated synopsis of my story is as follows:

While an inmate at F.M.C. Devens Camp in Ayer, Massachusetts, I began experiencing vision problems within my right eye in late April of 2001. I subsequently reported my vision problems beginning on May 8th, 2001. And, on repeated occasions to various attending Physician's Assistant's during the F.M.C. Devens Camp's "Sick Call" periods. Where, my vision problem was continually brushed aside, as: "My probably needing an eyeglass prescription"?

I informed these attending Physician's Assistant's that I had tried on quite a few different pairs of my fellow inmate's eyeglasses. And, that the vision problem within my right eye persisted. I was subsequently informed by these attending Physician's Assistant's that all they could do was: to place my name on a waiting list, to be seen by a "visiting Optometrist".

Unfortunately, at the time when I'd first begun experiencing vision problems within my right eye, and reported my vision difficulties at the F.M.C. Devens Camp "Sick Call" period, (on 5/8/2001) F.M.C. Devens was without a full time staff Eye Care Professional (Optometrist or Ophthalmologist). In fact, F.M.C. Devens was without a full time staff Eye Care Professional, until the arrival of Dr. C. Howard in November of 2002! (Appx. 18 months after I'd first begun experiencing my vision problems).

"k"

After numerous "Cop-Outs", and pleas for help by me to numerous staff members at F.M.C. Devens & F.M.C. Devens Camp (in which I sought assistance in the expediting of my being seen by the aforementioned visiting Optometrist) were to no avail, I was finally seen and examined by the F.M.C. Devens "visiting Optometrist" on September 24, 2001. (after a more than 4 ½ month wait). And, it was at this time, that I was informed that: I had had the Glaucoma Eye Disease all along!

During this above named eye examination, (On 9/24/01) I was also informed that: I needed to be taken to an "Outside Hospital", to be examined by an Ophthalmologist... As Soon As Possible!

Next, after my having to wait for almost 2 more months, (Since 9/24/01) I was finally taken to an "Outside Hospital" (On 11/13/01) to be examined by an Ophthalmologist. During this appointment my Glaucoma diagnosis was re-confirmed, and I was informed that: they (The D'Ambrosio Eye Clinic, 100 Hospital Road, Leominster, MA) wanted to perform a surgical procedure (Trabeculoplasty) upon my right eye the very next day! (Of 11/14/01).

Unfortunately, because of the ineptitude of F.M.C. Devens, and the F.M.C. Devens Health Services Department, I was not allowed to undergo my much needed Surgical Eye Procedure (Trabeculoplasty) until more than 2 months later! (On 1/15/02). After which, I was informed by my eye surgeon (Ophthalmologist) that: I had incurred permanent damage to my right eye's optic-nerve. And, that it was irreversible.

Subsequently, as calendar year 2002 progressed, I experienced a relapse within the pressure of my right eye. This relapse, may very well have been detected in a timely manner, if not for the failure of F.M.C. Devens and The F.M.C. Devens Health Services Department to schedule, and perform a doctor recommended (90 day) post-surgical eye examination upon me.

I furthermore experienced repeated delays, as well as the failure of the F.M.C. Devens Health Services Department, and the F.M.C. Devens Pharmacy to dispense my much needed (Dr. Prescribed) eye medications to me during calendar year 2002. And, as a direct result of one of these aforementioned failures, a second, more invasive, and serious type of surgical eye procedure (known as a Trabeculectomy) needed to be performed upon my right eye! (On 10/15/02).

Unfortunately, soon there after, a third surgical eye procedure then needed to be performed upon my right eye (On 12/17/02). This (3rd) surgical procedure was necessitated in order to remove what is known as a: "tenons cyst". Which, had developed over the incision site of the/my aforementioned Trabeculectomy.

Immediately following this 3rd (12/17/02) surgical eye procedure, my (Dr. Prescribed) post-surgical eye medications such as: anti-inflammatories, antibiotics, a pupil dilation medication (known as Atropine) as well as a post-surgical pain medication were all withheld from me by the F.M.C. Devens Hospital and the F.M.C. Devens Pharmacy... Until I myself, was able to report this aforementioned occurrence the very next day (Of 12/18/02) to my eye surgeon (Ophthalmologist).

My eye surgeon seemed quite taken aback by this unprofessional, and incompetent action on the part of F.M.C. Devens, the F.M.C. Devens Hospital, the F.M.C. Devens Health Services Department, and the F.M.C. Devens Pharmacy!

My eye surgeon then had to re-write these post (12/17/02) surgical prescription eye medications for me, in order to insure my eye's health, safety, and well-being!

It wasn't until 01/07/03 (during a scheduled eye examination) that I was first introduced to Dr. C. Howard, F.M.C. Devens' newly appointed (Nov/2002) Ophthalmologist. After (appx.) four years of activation, (the F.M.C. Devens Camp opening on 10/27/98, and The F.M.C. Devens Main Prison itself opening on 1/26/99) it wasn't until November of 2002, that a full time staff eye care professional was finally appointed for F.M.C. Devens in order to dispense and monitor the eye care for the inmates at F.M.C. Devens and F.M.C. Devens Camp.

After my having been examined by numerous Optometrist's and Ophthalmologist's over the course of the previous (appx.) 18 months, and my having to personally undergo three separate eye surgeries in calendar year 2002, I must say that I was quite impressed by Dr. C. Howard's skill and professionalism as a trained Ophthalmologist. And so, I have been compelled to write this letter today, in behalf of Dr. C. Howard, F.M.C. Devens, Ayer, MA.

It is my firm belief and contention (James J. Murray, register No.# 56285-079) that I, and my eyesight had fallen victim to the incompetence, miscommunication, mismanagement, and negligence of F.M.C. Devens, the F.M.C. Devens Health Services Department, and the F.M.C. Devens Pharmacy. As well as, my falling victim to the incompetence and misdiagnoses of the F.M.C. Devens' Physician's Assistant's... on repeated occasions. (One of whom, requested of me on 09/27/02, that I write out a statement for him, absolving him of any responsibility regarding my eye care, and the permanent damage which I had incurred).

It is therefore my further contention that F.M.C. Devens' own mission statement has been contradicted and violated. (Please see enclosed copy of same, next page).



# Mission Statement

*The health care mission of FMC Devens, is to provide necessary medical, dental and mental health services to inmates by competent, professional staff, consistent with acceptable community standards.*

In the very words of the newly appointed FMC Devens Ophthalmologist: Dr. C. Howard himself, (During my 1st initial eye examination with him on 01/07/03) Dr. C. Howard stated to me that; "Unfortunately, we can't do anything about the damage that's already been done to your right eye Mr. Murray.... That's permanent". "But, (Dr. C. Howard continued) we can try to prevent you from losing any more of your eyesight".

Upon witnessing Dr. C. Howard's competence first hand for myself during this 01/07/03 eye examination with him, I remarked to Dr. C. Howard at this time; "That I thought that he was an excellent eye care professional"! (For which, Dr. C. Howard then thanked me).

I then went on to state to Dr. C. Howard that I was so happy for the Inmates who were presently at F.M.C. Devens, and, any inmates in the future (at F.M.C. Devens) who may need eye care, to now have an eye care professional like him there to help them! (For which, Dr. C. Howard once again thanked me). Dr. C. Howard himself, then went on to remark to me that; "Maybe you (inmate Murray) could mention something to the warden for me, so I could get some of the equipment I'd like to have here (at F.M.C. Devens) to help the inmates"? (Dr. C. Howard was referring to F.M.C. Devens warden: David L. Winn).

(Surprised at hearing an F.M.C. Devens staff member making such a remark to me) I answered Dr. C. Howard by stating to him that; "I promise you Dr. Howard, that I will personally speak with the F.M.C. Devens warden, (David L. Winn) and, I am going to tell him how fortunate F.M.C. Devens now is, to have on it's staff, such an excellent eye care professional"! "And, (I continued) that I can speak from authority, because of everything that I had personally been through with the F.M.C. Devens Health Services Department"! "And, (I said) all of the unnecessary permanent damage that I had suffered to my right eye, and my right eye's Optic nerve, as a result"!

I then went on to state to Dr. C. Howard that; "Unfortunately for me Dr. Howard, the permanent damage is already done". "And, (I said) I've already lost a lot of the eyesight in my right eye as a result of the incompetence and the negligence of F.M.C. Devens and the F.M.C. Devens Health Services Department". "But, (I said) if I can do anything to help out anybody else with an eye problem I will, because I know first hand, how very precious our eyesight is"! "So, (I said) I promise you Dr. Howard, that I positively will speak with (F.M.C. Devens) Warden Winn in your behalf"! My appointment then concluded by Dr. C. Howard informing me: that he would schedule me to be seen by him again, at a later date. (Post 01/07/03).

All together, during my time incarcerated at F.M.C. Devens and the F.M.C. Devens Camp, (Until my release on 05/24/04) I received a total of eight eye examinations and eye pressure tests (between 01/07/03 - 04/14/04) conducted by Dr. C. Howard (The F.M.C. Devens Ophthalmologist).

Slightly after one of these scheduled eye examinations, (my second, which, was conducted on 02/21/03)... (In which, I reiterated my promise to Dr. C. Howard of my speaking with the F.M.C. Devens Warden David L. Winn in his behalf) I happened to encounter Dr. C. Howard in the lobby of the F.M.C. Devens Hospital (on 02/25/03).

Upon Dr. C. Howard's noticing me, I was approached by Dr. Howard, who, proceeded to mention to me that he (Dr. C. Howard) had since learned that: The Warden of F.M.C. Devens (David L. Winn) was not the right one to be addressing the issue of his (Dr. C. Howard's) equipment needs at F.M.C. Devens. But, instead, perhaps a letter by me (James J. Murray) to: "Region" would be better? (Meaning the Federal Bureau of Prisons Northeast Regional Office in Philadelphia, Pennsylvania).

I then replied back to Dr. C. Howard that: Not only do I promise that I'm going to speak with Warden Winn for you Dr. Howard, I promise that I'll write a letter not only to the B.O.P. Regional Office, (in Phila, PA) but, to the B.O.P. Headquarters in Washington, D.C. as well! (To which, Dr. C. Howard then smiled, and walked away).

Soon after this aforementioned encounter and conversation with F.M.C. Devens Ophthalmologist Dr. C. Howard took place, (on 02/25/03) the opportunity to approach, and speak with F.M.C. Devens Warden (David L. Winn) presented itself to me. (In late Feb/Early March 2003).

I encountered F.M.C. Devens Warden David L. Winn in the "Chow Hall" of the F.M.C. Devens main prison (while he had been standing main line). As, I happened to go there during the lunch time hour for the express purpose of speaking with him in Dr. C. Howard's behalf.

Upon my approaching the Warden, (David L. Winn) I politely asked him; "For his permission to speak with him"? The Warden replied; "yes" to me. But, would not turn around to face me. (He had had his back turned to me). Instead, the Warden simply "looked over his shoulder at me". (As if trying to say make it quick)!

Warden Winn's body language said everything to me! However, I began by saying; "Sir, I just wanted to let you know that the new eye doctor that you now have working here at F.M.C. Devens: Dr. C. Howard, is really good"! I attempted to then inform Warden Winn that; "I had the eye disease Glaucoma." "And, that I had been seen by quite a few different Optometrists and Ophthalmologists over the previous (appx) 18 months." "And so, I felt as thought I knew what I was talking about when I said that I thought that Dr. C. Howard was an excellent eye doctor!"

Warden Winn, (who still had not turned around to face me all this time) simply then nodded his head in the affirmative. At this exact moment, I remembered what Dr. C. Howard had mentioned to me that day (Of 02/25/03) in the lobby of the F.M.C. Devens Hospital. When, Dr. C. Howard had mentioned to me that he had learned that the Warden of F.M.C. Devens, (David L. Winn) was not the right one to be addressing the issue of his (Dr. C. Howard's) equipment needs at F.M.C. Devens. It was also at this exact moment, that I knew (By his body language and his demeanor) that my talking to the Warden of F.M.C. Devens, (David L. Winn) was an absolute waste of time! I then excused myself, and walked away.

3/25/03 On this day, I received my third eye examination conducted by Dr. C. Howard (The F.M.C. Devens Ophthalmologist). During the course of this day's eye examination, I informed Dr. C. Howard that; "I always keep my promises Dr. Howard"! "And, (I continued) I did attempt to speak with the F.M.C. Devens Warden (David L. Winn) in your (Dr. C. Howard's) behalf, one day in the F.M.C. Devens Chow Hall". "In, either late February, or early March"? (Of 2003). "And, (I said) you were right Dr. Howard"! I said; "Warden Winn is not the right person for me to be speaking with regarding the issue of your (Dr. C. Howard's) equipment needs here at the F.M.C. Devens"! (To which, Dr. C. Howard then nodded his head in the affirmative).

I informed Dr. C. Howard that; "The F.M.C. Devens Warden (David L. Winn) wouldn't even turn all the way around to speak with me that day in the F.M.C. Devens Chow Hall"! (In late February or early March '03). I then demonstrated to Dr. C. Howard: How Warden Winn would only speak to me by simply "Looking over his shoulder" at me! I told Dr. C. Howard that; "It was as if he (Warden Winn) didn't even want to give me the time of day"! "So, (I continued) I knew that my mentioning anything to him (Warden Winn) about your equipment needs here at F.M.C. Devens Dr. Howard, would just fall on deaf ears, and be an absolute waste of time"! (To which, Dr. C. Howard once again nodded his head in the affirmative).

I then told Dr. C. Howard that; "I was able however, to mention to Warden Winn that I had been seen by quite a few different Optometrists & Ophthalmologists over the past (appx) 18 months". "And, (that in my opinion) that the new eye doctor which you now have working here at F.M.C. Devens: Dr. C. Howard, is Excellent"! (To which, Dr. C. Howard then smiled, and said; Thank You).

As my appointment with Dr. C. Howard was concluding on this day, (Of 03/25/03) I reconfirmed my earlier promises which I had made to him of: My writing a letter to the Federal Bureau of Prisons Northeast Regional Office (in Phila, PA). And, my writing a letter to the Federal Bureau of Prisons Central office itself (in Wash, D.C.) In, the hopes of my letters being of assistance to him regarding the issue of his equipment needs at F.M.C. Devens. And, his desires of improving the eye care services at F.M.C. Devens. And so, I am thus brought to the reason why I have been compelled to write this letter today.

You will have noticed that at the beginning of my letter today, I have written this letter in behalf of: Dr. C. Howard (the F.M.C. Devens Ophthalmologist). In addition, you will have noticed that I have written this letter today, in behalf of all inmates at F.M.C. Devens & F.M.C. Devens Camp (both present & future). As well as, in behalf of all Federal Inmates throughout the entire Federal Bureau of Prisons System (both present and future).

You will have also noticed today, that upon this letters accompanying: "Administrative Remedy Appeal Form", that I have filled in the entire face of this form, including, the: (Part B-Response) Section. I have done so, because no response will be necessary from the Federal Bureau of Prisons to me.

Nothing can be done, or said, by anyone from the B.O.P.s Northeast Regional Office in Phila, PA. Or, from the B.O.P.s Central Office itself, in Wash, D.C.

Nothing can be done, or said, by anyone within the Federal Bureau of Prisons that could ever repair, or bring back any of the precious eyesight which I have lost due to the incompetence, misdiagnoses, and negligence of F.M.C. Devens, the F.M.C. Devens Health Services Department, and the F.M.C. Devens Pharmacy.

My heart is absolutely broken over the amount of permanent damage I have suffered, and vision I have now lost, as a result of this institution. And, it's failure, to have employed a full time staff Eye Care Professional until November, 2002.

One may wonder: "Why are we only just now hearing from Mr. Murray on this issue"? And, my reason for my having to wait until now, (After my release on 05/24/04) is, as I have written down on this letters accompanying "Administrative Remedy Appeal Form"...Out of fear.

In addition to my first being misdiagnosed on repeated occasions by F.M.C. Devens Physician's Assistant's. And, my then experiencing lengthy delays in the correct diagnosing and treatment of my Glaucoma eye disease. And, my experiencing repeated delays, as well as the failure of the dispensing of my much needed (Dr. prescribed) eye medications. That, upon my voicing of some of my concerns regarding my eye's medical treatment (V.I.A. Cop-Out) I was punished. I was punished by having my security level raised needlessly and unnecessarily (Under the guise of a management variable/for medical reasons from 10/29/02 - 04/18/03).

And so, I have chosen to remain silent until now (   /   /   ). I am no longer in fear of F.M.C. Devens as I am now under the medical care of the Massachusetts Eye and Ear Infirmary in Boston, MA. In addition, I have also chosen to remain silent until now, in order that I may seek the advice and protection of legal counsel without fear of reprisal or retribution.

You will notice today, that (stapled upon this letters Accompanying Administrative Remedy Appeal Form) I have enclosed 2 recent pictures taken of myself, outside of the Massachusetts Eye and Ear Infirmary in Boston, MA.

You will notice that in one of these photographs, I am wearing a special pair of protective ophthalmic sunglasses. (Which were given to me by an ophthalmologist). And, in the other photograph, (sunglasses removed) my right eye is completely closed. Because of the permanent damage which has now been done to my right eye, I must now keep it closed while I am outdoors, due to its sensitivity to daylight.

You will notice today also, that (stapled to this letters last page) I have enclosed a photocopy of a recent newspaper article. (Taken from the Wednesday, May 5th, 2004 edition of the Boston Herald Newspaper). This article speaks of the risk factors of the Glaucoma Eye Disease, and it stresses the importance of medical eye examinations...especially, for people 40 years of age and older.

Glaucoma is a silent disease. However, through early detection and treatment from an Eye Care Professional such as an Optometrist or Ophthalmologist, it can be arrested and treated. (As the enclosed article states). And, it is with this in mind, (as well as a host of any and all other eye diseases/vision problems) that I make the following plea to you today.

First, in behalf of F.M.C. Devens Ophthalmologist: Dr. C. Howard, could somebody or someone from your office Please Please contact Dr. C. Howard at: The Federal Medical Center (F.M.C.) Devens, Ayer, MA.

I ask of you today at both the Federal Bureau of Prisons Northeast Regional Office in Phila, PA, as well as the Federal Bureau of Prisons Central Office in Wash, D.C. If: somebody or someone could please inquire of Dr. C. Howard as to how they can help him regarding his ophthalmic equipment needs?

There are many wonderful pieces of equipment and devices which are available, which can aid Dr. C. Howard in his quest of improving the eye care services at F.M.C. Devens. Which in turn, could help the inmates at F.M.C. Devens and F.M.C. Devens Camp (both present and future). (Whom, I have spoken in behalf of as well within my letter today).

Additionally, I ask of you today at the Federal Bureau of Prisons Executive Level: if you could please institute a national program within the Federal Bureau of Prisons System that would provide automatically scheduled, (upon arrival within the system) as well as automatically scheduled, bi-annual eye examinations for all federal inmates (both present and future). Particularly, for those federal inmates within the: 40 years of age and older category.

As mentioned earlier within my letter, Glaucoma is a silent Disease. And, many inmates may now have it, and not be aware of it. (As well as a number of other eye diseases). It is for these inmates as well that I speak in behalf of, as I make this plea to you today. PLEASE, institute a national (automatically scheduled) eye examination/eye care program within the entire Federal Bureau of Prisons system for your fellow man.

In closing, on a personal and humanitarian note from myself, to whomever may be reading my words today, I would like to urge you and your loved ones to be scheduled for eye examinations on a regular basis by a qualified Optometrist or Ophthalmologist, in order to insure the health of your eyes, and the health of your loved one's eyes....

After having been through what I've been through, it is my sincere hope and desire to not see what has happened to me and my eyesight ever happen to another fellow human being.

Respectfully yours,

James J. Murray

James J. Murray
Register # 56285-079

BOSTON HERALD WEDNESDAY, MAY 5, 2004

# Keep your eyes open for risk factors of glaucoma

By ALLAN APPEL
SCRIPPS HOWARD

Want to hear a startling fact? About 1.5 million Americans have glaucoma — and don't even know it.

Glaucoma is the second-leading cause of blindness in this country, and the leading cause of blindness among African-Americans.

The good news is damage from glaucoma can be arrested. The bad news is damage already caused by glaucoma cannot be reversed.

All the more reason for an eye examination, including a glaucoma test, at least every two years.

The risk factors for glaucoma are straightforward. Unfortunately, except for one of them, they are not within our control.

The first factor is age. People older than 40 are more at risk. And that risk increases as we get older.

Letting more than two years elapse between medical eye exams is another no-no. This is the one factor we can control. There are no outward symptoms for glaucoma, until damage to vision already has begun.

Glaucoma tends to be prevalent in families. So, risk increases if a close relative has had glaucoma.

People at risk need to get an eye exam. It's that important. If access to an eye doctor is a problem, help is available.

The Glaucoma Eye Care Program is open to all U.S. citizens or legal residents who have not had an eye exam in at least 12 months. Additionally, there must be an increased risk for glaucoma because of family history, race or age. Last, you must not have eye-care insurance through the VA or an HMO.

There is also a Seniors Eye Care Program for those 65 or older. In this program, all U.S. citizens or legal residents 65 or older are eligible if they have not seen an ophthalmologist in three years or more, and do not have eye-care insurance through an HMO or the VA. Eligible individuals may then receive a comprehensive medical eye exam and as much as one year of treatment for any condition diagnosed during the initial exam. All with no out-of-pocket expense.

For both programs, certain exclusions apply. To obtain complete details, contact Eye Care America, a nonprofit division of the American Academy of Ophthalmology, at 800-391-EYES. More than 7,800 ophthalmologists nationwide volunteer for these programs.

There is just no excuse not to have an eye exam anymore.

U.S. Department of Justice

**Central Office Administrative Remedy Appeal**

Federal Bureau of Prisons

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-DIR-9 and BP-DIR-10, including any attachments must be submitted with this appeal.

From: Murray, James, J. (LAST NAME, FIRST, MIDDLE INITIAL) 56285-079 (REG. NO.) I (Camp) (UNIT) F.M.C. Devens (INSTITUTION)

**Part A—REASON FOR APPEAL**

My name is James J. Murray, and I have recently been released (on 5/24/04) from the F.M.C. Devens Camp, in Ayer, Massachusetts. And, I am now assigned to the Boston, MA "Half-Way House". A/K/A: The Coolidge House, at 307 Huntington Avenue, Boston, MA 02115.

During my (appx) 125 months of incarceration, I have never filed a single B.P.#8, B.P.#9, B.P.#10, or, B.P.#11. So, I have not been what may be referred to as a "complaining type of an inmate". I had elected not to do so however, out of fear.

While an inmate at the F.M.C. Devens Camp, after being misdiagnosed on repeated occasions, and, after a lengthy time period, I was eventually correctly diagnosed by an "outside" eye specialist, as having the eye disease: Glaucoma. Which, subsequently resulted in my requiring 3 seperate eye surgeries throughout calendar year 2002. And, in the midst of these 3 eye surgeries & beyond, my much needed (Dr. prescribed) eye medications had either failed to be dispensed to me, or, failed to be dispensed to me in a timely manner by the F.M.C. Devens, the F.M.C. Devens Health Services Department, and/or the F.M.C. Devens Pharmacy. All of these aforementioned factors, have now contributed to a great deal of permanent damage & vision loss for me within my right eye.

8-23-04
DATE

James J. Murray
SIGNATURE OF REQUESTER

**Part B—RESPONSE**

Subsequent to my release on 5/24/04, (After a required 72 hour waiting period) on 5/27/04, 1 requested & received permission from my newly assigned case manager at the Boston Coolidge House (C.S.C.) to immediately go to the renowned Massachusetts Eye and Ear Infirmary in Boston, MA, for an eye evaluation.

After 3 now seperate, & in-depth eye examinations/evaluations, I have been placed on a schedule to be seen every 3 months in order to keep a close watch on my eye's condition.

The purpose of my sending you this form today, is to inform you of the terrible tragedy that has occurred to me & my right eye while an inmate at the F.M.C. Devens Camp, in Ayer, Massachusetts.

I am now under the medical care of the Massachusetts Eye and Ear Infirmary in Boston, MA. And, I am no longer dependent or reliant upon F.M.C. Devens, the F.M.C. Devens Health Services Department, or, the F.M.C. Devens Pharmacy for the health care of my eyes. Nor, for the dispensing of my eye medications. Thus, the ending of both my fear, as well as my silence regarding the above named institution.

DATE

GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE

CASE NUMBER: 350637

**Part C—RECEIPT**

CASE NUMBER:

Return to: LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION

SUBJECT:

DATE

SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

USP LVN

Printed on Recycled Paper

BP-231(13)
APRIL 1982

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: SEPTEMBER 28, 2004

FROM: ADMINISTRATIVE REMEDY COORDINATOR
BOP CENTRAL OFFICE

TO : JAMES MURRAY, 56285-079
BOSTON CCM LOC: 1BN HC
JFK FEDERAL BLDG, SUITE 2200
BOSTON, MA 02203

FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID : 350637-A1 CENTRAL OFFICE APPEAL
DATE RECEIVED : SEPTEMBER 1, 2004
SUBJECT 1 : MEDICAL CARE - IMPROPER OR INADEQUATE
SUBJECT 2 :
INCIDENT RPT NO:

REJECT REASON 1: YOU SUBMITTED YOUR REQUEST OR APPEAL TO THE WRONG LEVEL. YOU SHOULD HAVE FILED AT THE INSTITUTION, REGIONAL OFFICE, OR CENTRAL OFFICE LEVEL.

REJECT REASON 2: SEE REMARKS.

REMARKS : YOU MAY REFILE TO CCM OFFICE.

RECEIVED
COMMUNITY CORRECTIONS OFFICE
OCT 4 2004
BOP-REGIONAL OFFICE
BOSTON, MA

JAMES P. DUGGAN
ATTORNEY AT LAW
160 STATE STREET
BOSTON, MA 02109

RECEIVED
2004 NOV 24 A 8:51

TELEPHONE (617) 523-7222
FACSIMILE (617) 722-0144

November 16, 2004

**BY FIRST CLASS &**
**CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**
**7099 3220 0007 0226 5826**

Harley G. Lappin, Director
Federal Bureau of Prisons
320 First Street NW
Washington, DC 20534

**Re: James J. Murray, DOB: 2/11/56**
**SSN# 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**

Dear Mr. Lappin,

On behalf of my client, James J. Murray, I enclose for your consideration a Claim for Damage, Injury, or Death, Form 95-108.

Thank you for your attention to this matter.

Very truly yours,

James P. Duggan

/jpd

cc: James J. Murray
Michael J. Sullivan, United States Attorney
Robert B. McCallum, Jr., AAG, Civil Division

"M"

56285-079

# CLAIM FOR DAMAGE, INJURY, OR DEATH

INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions.

FORM APPROROVED OMB NO. 1105-0008 EXPIRES 6-30-01

1. Submit To Appropriate Federal Agency:

Harley G. Lappin, Director
Federal Bureau of Prisons
320 First Street NW
Washington, DC 20534

2. Name, Address of claimant and claimant's personal representative, if any. *(See instructions on reverse.) (Number, street, city, State and Zip Code)*

James J. Murray
c/o James P. Duggan, Atty. at Law
160 State St., Boston, MA 02109

| 3. TYPE OF EMPLOYMENT | 4. DATE OF BIRTH | 5. MARITAL STATUS | 6. DATE AND DAY OF ACCIDENT | 7. TIME *(A.M. OR P.M)* |
|---|---|---|---|---|
| MILITARY X CIVILIAN | 2/11/56 | single | 12/17/02 & continuing | |

8. Basis of Claim *(State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof) (Use additional pages if necessary.)*

The claimant was an inmate at F.M.C. Devens. In May, 2001, he began to experience vision problems with his right eye. The claimant received improper or inadequate medical care over a period of years. He required three (3) surgical procedures. The last occured on December 17, 2002. Post-surgical medications were withheld from the claimant causing him additional pain and suffering. The claimant has previously reported this history to the Bureau of Prisons

9. PROPERTY DAMAGE

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT *(Number, street, city, State, and Zip Code)*

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. *(See instructions on reverse side)*

JAN 28 2005

RECEIVED JAN - 4 2005 BUREAU OF PRISONS OCCUPATION BRANCH

10. PERSONAL INJURY/WRONGFUL DEATH

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT

Permanent loss of vision - right eye
Pain and suffering

11. WITNESSES

| NAME | ADDRESS *(Number, street, city, State, and Zip Code)* |
|---|---|
| Drs. Maher, Levin & D'Ambrosio | D'Ambrosio Eye Care, Professional Bldg. Suite 2B, 100 Hospital Rd, Leominster, MA 01453-2245 |
| Dr. C. Howard | FMC Devens, Ayer, MA |

12. *(See instructions on reverse)* AMOUNT OF CLAIM *(in dollars)*

| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL *(Failure to specify may cause forfeiture of your rights.)* |
|---|---|---|---|
| -0- | $1,500,000.00 | -0- | $1,500,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE ACCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT *(See instructions on reverse side.)* | 13b. Phone number of signatory | 14. DATE OF CLAIM |
|---|---|---|
| James J. Murray | 617-846-5477 | 11/14/04 |

**CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM**

The claimant shall forfeit and pay to the United States the sum of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the United States. *(See 31 U.S.C. 3729.)*

**CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS**

Imprisonment for not more than five years and shall be subject to a fine of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the United States. *(See 18 U.S.C.A. 287.)*

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.

A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.

C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.

D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## INSTRUCTIONS

**Complete all items – Insert the word NONE where applicable**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A SUM CERTAIN FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN TWO YEARS AFTER THE CLAIM ACCRUES.

Any instructions or information necessary in the preparation of your claim will be furnished, upon request, by the office indicated in item #1 on the reverse side. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplemental regulations also. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with said claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file claim for both personal injury and property damage, claim for both must be shown in item #12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to completely execute this form or to supply the requested material within two years from the date the allegations accrued may render your claim "invalid". A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.

**Failure to specify a sum certain will result in invalid presentation of your claim And may result in forfeiture of your rights.**

Public reporting burden for this collection of information is estimated to average 15 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or other aspect of this collection of information, including suggestions for reducing this burden,

to Director, Torts Branch
Civil Division
U.S. Department of Justice
Washington, DC 20530

and to the
Office of Management and Budget
Paperwork Reduction Project (1105-0008)
Washington, DC 20503

## INSURANCE COVERAGE

In order that subrogation claims be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15. Do you carry accident insurance? Yes, if yes give name and address of insurance company (*Number, street, city, State, and Zip Code*) and policy number. X No

16. Have you filed claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?

17. If deductible, state amount

18. If claim has been filed with your carrier, what action has your insurer taken or proposes to take with reference to your claim? (*It is necessary that you ascertain these facts*)

19. Do you carry public liability and property damage insurance? Yes, If yes, give name and address of insurance carrier (*Number, street, city, State, and Zip Code*) X No

* U.S. GOVERNMENT PRINTING OFFICE: 1989--241-175